**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

12/29/14

**DORIAN E. RAMIREZ, CLERK**
**BY** DTello

ACCEPTED
13-14-00211
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
12/29/2014 5:40:19 PM
DORIAN RAMIREZ
CLERK

## NO. 13-14-00211-CV

## IN THE THIRTEENTH COURT OF APPEALS
## CORPUS CHRISTI, TEXAS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/29/2014 5:40:19 PM
DORIAN E. RAMIREZ
Clerk

### RUDIS ROBLES AND CLAUDIA E. FLORES ROBLES,
**Appellants**

### VS.

### CHRISTOPHER MANN, GWENDA MANN, AND
### MANN'S MACHINE, INC.,
**Appellees**

**On Appeal from the 284th District Court of Montgomery County, Texas**
**Trial Court Cause Number 10-12-13737-CV**

### REPLY BRIEF FOR CROSS-APPELLANTS,
### CHRISTOPHER MANN, GWENDA MANN,
### AND MANN'S MACHINE, INC.

**Tom Shipp**
**State Bar No. 18271000**
**10200 Grogan's Mill Road, Suite 320**
**The Woodlands, Texas 77380**
**(281) 364-7228**
**(281) 364-7230 – Telecopier**
**tomshippassoc@aol.com**

**Kenna M. Seiler**
**State Bar No. 13944250**
**The Seiler Law Firm, PLLC**
**8505 Technology Forest Place**
**Suite 1102**
**The Woodlands, Texas 77381**
**(281) 419-7770**
**(281) 419-7791 – Telecopier**
**kenna.seiler@theseilerlawfirm.com**

**ATTORNEYS FOR APPELLEES**

### ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . ii

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issue Number One

    The trial court's finding of no damages for Christopher Mann,
    Gwenda Mann, and Mann's Machine, Inc. is against the great
    weight and preponderance of the evidence. (C.R. 228-230;
    R.R. Vol. 4, p. 10). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issue Number Two

    The trial court's award of only attorney fees through trial in the
    amount of $4,069.98 is against the great weight and
    preponderance of the evidence. (C.R. 228-230; R.R. Vol. 4, pp.
    10-11). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Prayer for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . .9

# INDEX OF AUTHORITIES

## CASES

*Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*,
      333 S.W.3d 301 (Tex. Civ. App.—Houston [1st Dist.] 2010, pet. denied) . . .3

*Smith v. Patrick W.Y. Tam Trust*,
      296 S.W.3d 545 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-5

*Tony Gullo Motors I, L.P. v. Chapa*,
      212 S.W.3d 299 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

## RULES

Tex. Civ. Prac. & Rem. Code Section 37.009. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IN THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS

---

RUDIS ROBLES AND CLAUDIA E. FLORES ROBLES,
                                                    Appellants

VS.

CHRISTOPHER MANN, GWENDA MANN, AND
MANN'S MACHINE, INC.,
                                                    Appellees

---

On Appeal from the 284th District Court of Montgomery County, Texas
Trial Court Cause Number 10-12-13737-CV

---

BRIEF FOR APPELLEES,
CHRISTOPHER MANN, GWENDA MANN,
AND MANN'S MACHINE, INC.

_____

## SUMMARY OF THE ARGUMENT

The evidence is undisputed that Robles interfered with the Manns' easement

rights.  As a result of that interference, the Manns sustained damages, damages

which were not controverted.

## ARGUMENT

**Issue Number One:  The trial court's finding of no damages for
Christopher Mann, Gwenda Mann, and Mann's Machine, Inc. is
against the great weight and preponderance of the evidence.   (C.R.
228-230; R.R. Vol. 4, p. 10) (Restated)**

1

The evidence is undisputed that Robles interfered with the Manns' easement rights. Because of that interference, the Manns sustained damages, damages which were not controverted. The Robleses claim that the Manns did not prevail on any claim for which they would be entitled to damages and there was insufficient evidence of those damages. But both contentions are incorrect.

There is both legally and factually sufficient evidence that the Robleses interfered with the Manns' property rights. Robles focuses on the timing of the installation of the gate, the prior temporary injunction, and the Manns' actions regarding the gate. But the focus should be on the Robleses' actions, as these support the claim for interfering with the Manns' property rights. And the Robleses' actions were many: Rudis Robles denied there was an easement, he placed a gate on the easement that was latched 24 hours a day, and he placed poles on the easement. (R.R. Vol. 2, pp. 29, 30-31, 35, 47-48, 52-53) And this was testimony directly from Mr. Robles. The Manns also testified about debris on the easement, with utility poles, trees, and pipes. (R.R. Vol. 2, pp. 63-64, 106, 107-108) Mr. Robles disagreed with the easement and did everything he could to interfere with the Manns' use of that easement.

As a result of this interference, the Manns and their business suffered damages. Mr. Mann testified that they sustained losses of $120,000.00 to

2

$130,000.00. (R.R. Vol. 2, p. 68) Customers and vendors could not get to the business. (R.R. Vol. 2, p. 69, 100)

The Robleses claim that because an easement does not convey title to the property, there is no claim for damages to real property. But this argument misses the mark. The Manns sued for interference with easement rights. To prevail on such a claim, they had to prove that the Robleses engaged in activities that interfered with their reasonable use and enjoyment of the easement. *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 310 (Tex. Civ. App.—Houston [1st Dist.] 2010, pet. denied). They provided this proof. And they provided proof of those damages, even under the standards set forth by the Robleses. The statement by the Robleses that the only evidence presented was Gwenda Mann's statement they lost business is incorrect. Both Mr. and Mrs. Mann testified to dollar amounts lost because of the Robleses' interference with their rights. (R.R. Vol. 2, p. 68; R.R. Vol. 2, p. 114)

This interference caused the Manns mental anguish damages—so much so they had to seek medical attention and were prescribed medication. (R.R. Vol. 2, p. 77; R.R. Vol. 2, pp. 113-114)

Because the evidence as to the interference and the damages sustained was so contrary to the overwhelming weight of all the evidence, this portion of the trial court's judgment should be set aside and a new trial ordered as to the Manns'

3

damages.

**Issue Number Two: The trial court's award of only attorney fees through trial in the amount of $4,069.98 is against the great weight and preponderance of the evidence. (C.R. 228-230; R.R. Vol. 4, pp. 10-11) (Restated)**

The Manns incurred substantial attorney fees in obtaining the declaratory judgment signed by the trial court to enforce their easement rights. The trial court erred by limiting the recovery of attorney fees to all of the fees charged in one month to the Manns by their prior attorney.

Specifically, the trial Court stated:

> I am awarding attorneys fees to Christopher Mann and Gwenda Mann, the attorneys fees being in an amount testified to by Ms. Tillman as being expended on this case during one month. That amount is $4,069.98.

(R.R. Vol. 4, pp. 10-11) But the Manns prevailed on their claim for a declaratory judgment, a claim that has been part of the relief sought by the Manns in their original pleading. (C.R. 10-74) Section 37.009 of the Tex. Civ. Prac. & Rem. Code allows the Court to award costs and reasonable attorney fees. Tom Shipp testified as to his reasonable hourly rate of $390.00 per hour. (R.R. Vol. 3 p. 60) He testified as to the number of hours worked. (R.R. Vol. 3 p. 64)

Attorney fees are conclusively proved when the supporting evidence is clear, direct, positive, and without contradiction from another witness or attendant circumstances, and such evidence could have easily been controverted. *Smith v.*

4

*Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547-548 (Tex. 2009). Robles' primary dispute with the Manns' attorney fees is that Tom Shipp did not segregate the fees. The general rule requires the segregation of attorney fees. But as the Texas Supreme Court directed in *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-314 (Tex. 2006), when discrete legal services advance both a recoverable and unrecoverable claim they are so intertwined that they need not be segregated. And Steven Lawrence testified about the attorney fees. (R.R. Vol. 3, p. 69) He testified that because of the common nucleus of acts, each of the causes of action are interrelated. (R.R. Vol. 3, p. 72) He testified that the fees sought by Christopher Mann, Gwenda Mann, and Mann's Machine, Inc. were reasonable and customary. (R.R. Vol. 3, pp. 72-73) The trial court erred in disregarding this uncontradicted testimony.

Cross-Appellants request that this Court sustain their Issue Number Two, reverse the Judgment of the trial court awarding attorney fees of $4,069.98, and remand to the trial court for a new trial as to the amount of the Cross-Appellants' attorney fees.

## CONCLUSION

The trial court's failure to award damages to the Manns and the trial court's award of attorney fees limited to $4,069.98 are not supported by sufficient evidence. The Robleses took affirmative and undisputed steps to interfere with the Manns'

5

easement. And because of those steps, the Manns sustained damages. The trial court's failure to award damages is not supported by sufficient evidence.

And the Manns attorney worked in excess of 200 hours, including the trial on the merits of this case. Yet the trial court awarded damages only for one month of fees charged by a prior attorney—and awarded no fees for the actual trial. The Robleses' only argument as to the Manns' fees is that Tom Shipp did not segregate his fees. But segregation is not required when the claims are so intertwined that they need not be segregated. Although Tom Shipp did not testify as to the intertwined nature of the claims, Steven Lawrence did. With this evidence, the trial court's award of attorney's fees for one month's work for the prior attorney is not support by sufficient evidence.

## PRAYER FOR RELIEF

Cross-Appellants request that this Court reverse the Judgment of the trial court on the issue of the Cross-Appellants' damages and attorney fees and remand this case to the trial court for a new trial on these issues.

Respectfully submitted,

THE SEILER LAW FIRM, PLLC


*/s/ Kenna M. Seiler*

Kenna M. Seiler
State Bar No. 13944250
8505 Technology Forest Place, Suite 1102
The Woodlands, Texas 77381
kenna.seiler@theseilerlawfirm.com
(281) 419-7770
(281) 419-7791 – Telecopier

Tom Shipp
State Bar No. 18271000
10200 Grogan's Mill Road, Suite 320
The Woodlands, Texas 77380
(281) 364-7228
(281) 364-7230 – Telecopier

ATTORNEYS FOR CROSS-
APPELLANTS

## CERTIFICATE OF SERVICE

Pursuant to Rule 9.5 of the Texas Rules of Appellate Procedure, I certify that the Cross-Appellants' Brief has been electronically filed with the Clerk of the Thirteenth Court of Appeals, and true and correct copies of same have been electronically served, on this 29th day of December 2014, correctly addressed as follows:

George D. Gordon
Richard S. Browne
Baggett, Gordon & Deison
307 N. San Jacinto
Conroe, Texas 77301

*/s/ Kenna M. Seiler*
Kenna M. Seiler

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 9.4(i)(2)(C) and 9.4(i)(2)(3) of the Texas Rules of Appellate Procedure, I certify that this Appellees' Brief contains 1,205 words (excluding the Caption, Statement regarding Oral Argument, Table of Contents, Index of Authorities, Signature, Proof of Service, Certification, and Certificate of Service). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes, which are in 12-point typeface. In making this Certificate of Compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/ Kenna M. Seiler*
Kenna M. Seiler



**BROOKSHIRE KATY DRAINAGE DISTRICT, Appellant v. THE LILY GARDENS, LLC, RICHARD E. FLUECKIGER AND KENNETH B. LUEDECKE, Appellees**

**NO. 01-07-00431-CV**

**COURT OF APPEALS OF TEXAS, FIRST DISTRICT, HOUSTON**

*333 S.W.3d 301*; *2010 Tex. App. LEXIS 7532*

**September 10, 2010, Opinion Issued**

**SUBSEQUENT HISTORY:** Released for Publication May 25, 2011.
Reconsideration denied by, En banc *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC, 2011 Tex. App. LEXIS 1619 (Tex. App. Houston 1st Dist., Feb. 25, 2011)*
Petition for review denied by *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC, 2012 Tex. LEXIS 84 (Tex., Jan. 27, 2012)*

**PRIOR HISTORY:** [**1]
  On Appeal from the 9th District Court, Waller County, Texas. Trial Court Case No. 06-08-18415.
*Brookshire Katy Drainage Dist. v. Lily Gardens, LLC, 2009 Tex. App. LEXIS 9716 (Tex. App. Houston 1st Dist., Dec. 22, 2009)*

**COUNSEL:** For APPELLANT: David Frishman, Katy, TX; Kevin D. Jewell, William S. Helfand, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, TX.

For APPELLEE: Dale Jefferson, Levon G. Hovnatanian, Raul H. Suazo, Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston, TX.

**JUDGES:** Panel consists of Justices Alcala, Hanks, and Wilson. Justice Wilson, dissenting.

**OPINION BY:** George C. Hanks

**OPINION**

[*304] **OPINION ON REHEARING**

Appellees, Lily Gardens, LLC, and its owners, Richard E. Flueckiger and Kenneth B. Leudecke (collectively, the "Defendants"), have filed a motion for rehearing. Appellant, Brookshire Katy Drainage District (the "District"), filed a response to the motion. We grant rehearing and withdraw our opinion and judgment of December 22, 2009 and substitute this opinion and judgment in their place.

The District filed suit against the Defendants and sought declaratory and injunctive relief, alleging, among other things, that the Defendants (record owners of the tract of real property at issue) violated the District's rights pursuant to an express easement and trespassed on the District's property. Specifically, the District alleged [**2] that the Defendants were "encroaching and infringing into the [District's] easement and culverts without permission."

The Defendants filed traditional and no-evidence summary judgment motions relating to all of the District's claims. The trial court granted summary judgment disposing of all of the District's claims and awarded attorney's fees to the Defendants. [1]

1 Prior to the trial court dismissing the case, the Defendants nonsuited their counterclaims against the District, and accordingly, those claims are not at issue in this appeal.

In its first two issues, the District contends that the trial court erred by granting the Defendants' motion for summary [*305] judgment on the District's claims for declaratory and injunctive relief for violation of the easement and trespass. In its third issue, the District argues the trial court erred in awarding attorney's fees to the Defendants under the Declaratory Judgments Act.

We find no reversible error and affirm.

**Background**

The District is a political subdivision of the State of Texas, created by the Texas Legislature, and charged with controlling drainage in an area of Waller County. Pursuant to this directive, in 1962 the District entered into two [**3] express easements with Mrs. Frank E. Smith and Johnnie Harris. Identical in language, the easements granted the District "a right of way and easement for the purpose of constructing, maintaining, operating, repairing and re-constructing a drainage canal" across two tracts of land. The easement conveyances, which were submitted by both parties as summary judgment evidence, go into greater detail regarding the respective rights of the parties, and state,

The DISTRICT shall have all rights and benefits necessary or convenient for the full enjoyment or use of the rights herein granted, with the right of ingress and egress to and from said drainage canal right of way, provided however, that after construction of said drainage canal, said right of ingress and egress of the DISTRICT shall be limited to the said right of way and to existing roads and passageways. The DISTRICT is given the right from time to time to cut and remove all trees, undergrowth, and abate other obstruction, upon said canal right of way, that may injure, endanger, or interfere with the construction, operation, maintenance and repair of said drainage canal.

The DISTRICT agrees during the life of this easement to repair [**4] all

damage to roads, passageways and fences resulting from the DISTRICT'S use in going to and from said easement and right of way, and to restore the same to the previously existing condition as near as possible.

GRANTOR reserves the right to use the facilities offered by the drainage canal for the disposal of surface waters, rain, or any excess waters collecting upon his land, and in such connection GRANTOR has the right in the manner provided by law and at his own expense to construct and provide ditches, drains and laterals connecting his said land or portions thereof with the drainage canal.

Pursuant to the easement, the District constructed a ten-foot deep drainage ditch traversing both of the tracts and severing the front portions of the tracts from the larger back parcels. After the drainage ditch was completed, the District installed a concrete bridge across the ditch to connect the front and back portions of the tracts. Underneath the bridge and in the drainage ditch, the District installed two metal pipes (or "culverts") that ran along with the route of drainage.

In 2004, Richard Flueckiger and Kenneth Luedecke created Lily Gardens, LLC ("Lily Gardens"), which acquired three [**5] consecutive tracts of land, including the two tracts subject to the drainage ditch easements with the District. After acquiring the property, Lily Gardens undertook various projects to make the property suitable for visitors as an outdoor event venue, including adding a picturesque covering to the existing cement bridge spanning the drainage ditch. Lily Gardens intended to use the existing bridge to transport visitors from a reception facility on the front part of the property to a gazebo on the back portion of the property.

[*306] Lily Gardens left all existing structures in place and merely affixed the bridge covering to the existing cement bridge at ground level; the bridge covering did not extend down to the actual drainage ditch nor did it touch the pipes (or "culverts") underneath the bridge. In 2006, the District sent Lily Gardens a cease and desist letter stating that the construction of the bridge covering constituted an encroachment on the District's right-of-way and otherwise violated the easement

restrictions. Specifically, the District alleged that the structure was attached to the District's "culverts," which "interfere[d] with the District's drainage plans and system, . . . violate[d] [**6] the easement restrictions, and impermissibly encroache[d] on the District's right-of-way."

After the Defendants refused to remove the bridge covering, the District filed suit. The District alleged causes of action for temporary and injunctive relief relating to (1) violation, encroachment, and infringement on the District's rights under the easement; (2) trespass; and (3) nuisance. Each claim involved the common allegation that Lily Gardens wrongfully constructed the bridge covering.

The Defendants filed traditional and no-evidence motions for summary judgment as to all of the District's causes of action. The trial court signed an order granting the "Defendants' Traditional and No-Evidence Motion for Summary Judgment," without specifying whether it was granting summary judgment on the traditional or no-evidence motions. In the order, the trial court specifically stated that "the bridge covering at issue . . . [did] not encroach on the Brookshire Katy Drainage District's easement rights" and that the Defendants were "not required to remove the bridge covering and defendants [were] expressly allowed to complete the bridge covering." [2] The court withheld ruling on the issue of attorney's [**7] fees so that it could hold a hearing.

> [2] In its brief, the District points to this language in the order and argues that the trial court "specifically state[d] the grounds on which [the summary judgment was] based[.]" Citing *Vannerson v. Klevenhagen, 908 S.W.2d 37, 41 (Tex. App.--Houston [1st Dist.] 1995, writ denied)*, the District argues that "Lily Gardens is limited to the rationale enumerated by the trial court and cannot seek affirmance on other arguments." The authority cited by the District is misplaced. The Texas Supreme Court has more recently held that the Court of Appeals is not limited to the grounds enumerated in a trial court's order and may consider any grounds presented to the trial court that are preserved for appellate review. *Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996)*. Accordingly, we need not opine on whether the statements in the order constitute the grounds on which the trial

court based its ruling.

After conducting a hearing on attorney's fees, the court signed an amended final judgment. In the judgment, the court reiterated that it granted the Defendants' motion for summary judgment, awarded attorney's fees, and disposed of all remaining claims [**8] by acknowledging that the Defendants non-suited their remaining claims without prejudice.

**Summary Judgment**

In its first and second issues, the District contends the trial court erroneously granted summary judgment because the Defendants failed to establish entitlement to judgment as a matter of law and, alternatively, the District raised genuine issues of material fact precluding summary judgment. Although the trial court granted summary judgment in the Defendants' favor on *all* of the District's causes of action, the District only challenges the trial court's summary judgment as to two of its claims; specifically, the claims relating to violation of easement and trespass. Accordingly, [*307] we limit our review to whether summary judgment was proper on those claims.

**A. Standard of Review**

"We review a grant of summary judgment de novo." *Ferguson v. Bldg. Materials Corp. of Am., 295 S.W.3d 642, 644 (Tex. 2009)* (citing *Tex. Mun. Power Agency v. PUC of Tex., 253 S.W.3d 184, 192 (Tex. 2007))*. In both traditional and no-evidence summary judgment motions, we review the entire record in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts [**9] against the motion. *Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006)*; *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999)*.

"[I]ssues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence." [3] *McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993)*. We must affirm the summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003)*.

3    On appeal, the District argues that the trial court erred in denying its motion for reconsideration that it filed after the trial court granted summary judgment. However, after granting summary judgment, the trial court generally has no obligation to consider further motions on issues adjudicated by the summary judgment. *Macy v. Waste Mgmt., Inc., 294 S.W.3d 638, 650-51 (Tex. App.--Houston [1st Dist.] 2009, pet. filed)*. New arguments to defeat summary judgment presented [**10] after the trial court has granted summary judgment do not warrant reversal. *See id.*; *see also TEX. R. CIV. P. 166a(c)*. Accordingly, we limit our review to those arguments set out in the District's summary judgment response, not those arguments presented for the first time in the District's motion for reconsideration or in its appellate briefs.

When a party seeks both a traditional and a no-evidence summary judgment on the non-movant's claim, we first review the trial court's summary judgment under the no-evidence standards of *Texas Rule of Civil Procedure 166a(i). Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004)*. If a non-movant failed to produce evidence to defeat the summary judgment motion, then we need not analyze whether the movant's summary judgment proof satisfied the less stringent "traditional" burden. *Id.* In other words, if no-evidence summary judgment was properly granted, we do not reach arguments under the traditional motion for summary judgment. *See id.*

Here, the Defendants included both traditional and no-evidence grounds in their motion for summary judgment. The trial court did not specify whether it was granting the motion on traditional or no-evidence grounds. [**11] Accordingly, we review the no-evidence grounds first.

**1. No-Evidence Summary Judgment**

Under the no-evidence standard, the party without the burden of proof may move for a no-evidence summary judgment on the basis that there is no evidence to support an essential element of the non-moving party's claim. *TEX. R. CIV. P. 166a(i)*. Once the motion is filed, the burden shifts to the non-moving party to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006)*. "The court must grant the motion unless [*308] the respondent produces summary judgment evidence raising a genuine issue of material fact." *TEX. R. CIV. P. 166a(i)*. If the non-movant brings forward more than a scintilla of evidence that raises a genuine issue of material fact, then summary judgment is not proper. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.--Houston [1st Dist.] 1999, no pet.)*.

Our review of a trial court's summary judgment extends to the evidence that was before the court at the time of the ruling. *Plotkin v. Joekel, 304 S.W.3d 455, 486 (Tex. App.--Houston [1st Dist.] 2009, pet. denied)*; [**12] *see also TEX. R. CIV. P. 166a(c)*; *TEX. R. APP. P. 33.1*. However, "[i]n determining whether a respondent to a no-evidence motion for summary judgment has sufficient evidence to raise a genuine issue of material fact, courts are not required to search the record without guidance." *Aleman v. Ben E. Keith Co., 227 S.W.3d 304, 309 (Tex. App.--Houston [1st Dist.] 2007, no pet.)*. A general reference to a voluminous record that does not direct the trial court and parties to the evidence relied upon is insufficient. *See Rogers v. Ricane Enterprises, Inc., 772 S.W.2d 76, 81 (Tex. 1989)*.

We will affirm a no-evidence summary judgment when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005)*.

**2. District's Summary Judgment Response**

In its response to the Defendants' no-evidence motion, the District specifically asserted that the construction of the bridge covering [**13] violated the terms of the easement. To support this argument, the District attached summary judgment evidence to its response, including the easement in question and pictures of the bridge covering. The District also attached the affidavit of Raymond Dollins, President of the District.

In the affidavit, Dollins states that the Defendants did not obtain a permit from the District prior to beginning construction on the bridge covering. The remainder of Dollins's affidavit is either (1) not relevant to a material fact regarding the easement or alleged trespass or (2) verbatim allegations and conclusions from the District's

response without supporting "statements of fact." *See TEX. R. CIV. P. 166a(f); TEX. GOV'T CODE ANN. § 312.011(1)* (Vernon 2005) (defining "affidavit" as a "statement in writing of a fact or facts").

Such conclusory statements in an affidavit are insufficient to raise an issue of fact in response to a motion for summary judgment. *See, e.g., Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996); Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984).* "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Winchek v. Am. Exp. Travel Servs. Co., 232 S.W.3d 197, 206 (Tex. App.--Houston [1st Dist.] 2007, no pet.).* [**14] Similarly, an affidavit that is nothing more than a sworn repetition of allegations in the pleadings has no probative force, as the statements are no more than conclusions or a mere surmise or suspicion. *Selz v. Friendly Chevrolet, Inc., 152 S.W.3d 833, 837 (Tex. App.--Dallas 2005, no pet.).*

Further, Dollins's conclusory statements that the District's legislative authority allows it do certain things (Dollins's interpretations of the law) are not competent [*309] summary judgment evidence. *Haden v. David J. Sacks, P.C., No. 01-01-00200-CV, 332 S.W.3d 503, 2009 Tex. App. LEXIS 3199, 2009 WL 1270372, *5 (Tex. App.--Houston [1st Dist.] 2009, pet. denied)* ("Statements that are nothing more than legal conclusions are not sufficient to support a summary judgment as a matter of law . . . ."). [4]

> 4  The absence of factual statements and the presence of conclusory statements are both defects of substance. *See Rizkallah v. Conner, 952 S.W.2d 580, 587 (Tex. App.--Houston [1st Dist.] 1997, no writ).*

In its reply brief, the District asserts (without supporting authority) that "every word in Mr. Dollins's affidavit in support of the District must be taken as true." That, however, is not the case when the affidavit is wholly lacking factual support. [**15] In the reply brief, the District argues that, in his affidavit, Dollins "clearly and unequivocally denied Lily Gardens' description of events." However, a sworn general denial of another party's factual accounts does not meet the burden under the no-evidence summary judgment grounds of *producing evidence* to create a material fact issue. *See Burrow v. Arce, 997 S.W.2d 229, 235-36 (Tex. 1999)* (rejecting affidavit as "nothing more than a sworn denial

of plaintiff's claims" that "could not support summary judgment"; further stating that an affiant "cannot simply say, Take my word for it; I know[.]"). In short, Dollins's affidavit contains no probative evidence favorable to the District's claims, as it is entirely his unsupported conclusions and interpretations of law.

The District's claim that the bridge covering infringes upon the scope of its easement across Defendants' land seems to be based, in part, upon an allegation that the covering either impedes the flow of water through the canal or that it might, in the future, impact the District's ability to repair or maintain the canal. However, the District failed to provide any summary judgment evidence to show this.

Thus, our analysis turns [**16] to the remaining summary judgment evidence: the express easement language and the photos of the construction in question. We must determine whether the mere act of constructing the bridge covering, even if that covering does not extend into the canal or impede the flow of water through the canal beneath it, violates the terms of the easement.

## B. Violation of Easement

On appeal, the District argues that the trial court erred in granting summary judgment on its claim for declaratory and injunctive relief relating to the Defendants' alleged violation of the easement.

### 1. Applicable Law

"An easement does not convey title to property." *Stephen F. Austin State Univ. v. Flynn, 228 S.W.3d 653, 658 (Tex. 2007)* (citing *Marcus Cable Assocs. v. Krohn, 90 S.W.3d 697, 700 (Tex. 2002)*). Instead, an easement is a nonpossessory interest in another's property that authorizes its holder to use that property for a particular purpose. *Marcus Cable, 90 S.W.3d at 700.* The contracting parties' intentions as expressed in the grant determine the scope of the interest conveyed. *Id. at 700-01.* We read the terms of an easement as a whole to reach an adequate interpretation of the parties' intentions and to carry out [**17] the purpose for which the easement was created. *Id. at 701.* Unless the language is ambiguous, we rely solely on the written instrument. *Koelsch v. Indus. Gas Supply Corp., 132 S.W.3d 494, 498 (Tex. App.--Houston [1st Dist.] 2004, pet. denied).*

[*310] "In determining the scope of an easement,

'we may only imply those rights reasonably necessary to the fair enjoyment of the easement with as little burden as possible to the servient owner.'" *Whaley v. Cent. Church of Christ of Pearland, 227 S.W.3d 228, 231 (Tex. App.--Houston [1st Dist.] 2007, no pet.)* (quoting *Lakeside Launches, Inc. v. Austin Yacht Club, Inc., 750 S.W.2d 868, 871 (Tex. App.--Austin 1988, writ denied))*; *see also Marcus Cable, 90 S.W.3d at 701.* "If a particular purpose is not provided for in the grant, a use pursuing that purpose is not allowed." *Marcus Cable, 90 S.W.3d at 701.*

To prevail on a claim for interference with easement rights, the District must prove that the Defendants engaged in activities that interfered with the District's reasonable use and enjoyment of the easement. *See Still v. Eastman Chem. Co., 170 S.W.3d 851, 854 (Tex. App.--Texarkana 2005, no pet.)* (citing *County of Harris v. Southern Pacific Trans. Co., 457 S.W.2d 336, 340 (Tex. Civ. App.-Houston [1st Dist.] 1970, no writ.)).*

### 2. [**18] Analysis

In their summary judgment motion, the Defendants specifically alleged that there was no evidence that they engaged in activities that interfered with the District's reasonable use and enjoyment of the easement. Accordingly, the burden shifted to the District to present summary judgment evidence raising a genuine issue of material fact that they did. *See Mack Trucks, Inc., 206 S.W.3d at 582.*

Here, the easement's stated purposes was for "constructing, maintaining, operating, repairing, and re-constructing a drainage canal, including drains, ditches, laterals and levees[.]" The District alleged that the Defendants' construction of the covering over the existing bridge interfered with its easement rights.

The bridge covering added by the Defendants is affixed to the preexisting cement bridge above the drainage canal, as distinguishable from construction in or obstructing the canal.

It is undisputed that the cement bridge was built around the time the District built the drainage canal. The pictures attached as summary judgment evidence by the District show that the bridge covering was attached to this preexisting bridge. The District does not provide any evidence showing that the structure [**19] was actually built onto or extended into the drainage canal. The District has asserts that the covering was affixed to the "culvert." By "culvert," the District is referring to two pipes that are located in the drainage canal, underneath the cement bridge. [5] The term "culvert" is not used in the easement grant, as are "canal" and "roadway." The easement delineates, in clear terms, the District's rights with respect (a) the roadways to access the drainage canal and (b) the canal. We also address (c) the District's public interest arguments.

> 5 *See Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 395 (Tex. 1991)* (drawing distinction between responsibilities with regard to easement and bridge crossing over easement in tort case).

#### a. Rights with respect to the roadway

The granting instrument provides the District with certain rights incident to the purpose or use of the easement, including the "right of ingress and egress to and from said drainage canal right of way[.]" In other words, the District has the right to use the Defendants' roadway to travel from the public street to the drainage canal location and back; the easement does not provide unlimited or exclusive use of the roadways [**20] or the Defendants' property. [*311] The instrument also provides, "after construction of said drainage canal, said right of ingress and egress of the DISTRICT shall be *limited* to the said right of way and to *existing roads and passageways*." (Emphasis added.) Thus, the District is prohibited from relocating the roadways. As further evidence of the District's limited right to use the roadways on the property, the easement also expressly states that, during the life of the easement, the District is required "to repair all damage to roads, passageways and fences resulting from the DISTRICT'S use[.]"

The intention of the parties was clearly expressed in the easement instrument. The District has no right, under the terms of the easement, to control or prohibit construction on the roadway. The District's only right with respect to the roadways is ingress and egress to and from the drainage canal, and the District has not produced any evidence showing that the construction of the bridge covering prevented its ingress and egress to and from the drainage canal.

#### b. District's Ability to Maintain the Drainage Canal

The District argues that the construction of the covering may interfere with its ability [**21] to maintain the canal. Specifically, the District argues that it may need to remove and replace its "culverts." The District points to language in the easement providing the District "the right from time to time to cut and remove all trees, undergrowth, and abate other obstruction, upon said *canal right of way*, that may injure, endanger, or interfere with the construction, operation, maintenance and repair of said *drainage canal*." (Emphasis added). The District has not produced any evidence to show how the bridge covering would interfere with "the construction, operation, maintenance and repair" of the drainage canal as required by the terms of the easement. In fact, the photographs, provided by the District as summary judgment evidence, conclusively establish that there is space between the preexisting cement bridge (to which the bridge covering was attached) and the piping in the drainage ditch below. In other words, the photos show that the cement bridge is not attached to the piping in the drainage ditch.

The District also suggests that the structure might interfere with the future operation of the drainage system because the District might opt to change the location of the culvert. [**22] But the District has not shown how the bridge covering might affect its ability to move the culvert located beneath the bridge that was erected by the District.

The District concedes that the bridge covering has not affected drainage, but it asserts that it may pose a drainage problem in the future. To this extent, Dollins's affidavit states:

> I do not know every possible future problem that might result from the covered bridge; but for example, it might be a drainage problem, it might be a wedding that was planned and the District removed its culverts before the wedding, it might be that someone was injured on the covered bridge; the District would not want those parties to claim that somehow the District was responsible for their problems.

The statement quoted above has no evidentiary value because it is not a "statement of fact," but instead, is Dollins's speculation. *See Wiggins v. Overstreet, 962 S.W.2d 198, 200 (Tex. App.--Houston [14th Dist.] 1998,* *writ denied)* (observing that when summary judgment evidence raises only mere suspicion or surmise of fact in issue, no genuine issue of material fact exists).

[*312] **c. Benefit of the Public**

The District also makes an appeal to the interest of [**23] the public, despite its failure to put forth any evidence showing that the bridge covering affects drainage, water flow, or flooding. In its summary judgment response, and without supporting allegations or facts, the District urged that "there will be injury to the area landowners and the general public at large."

On appeal, the District makes a similar public interest argument, citing authority relating to "public easements." However, unlike the authority cited, this case does not involve a public dedication or an easement authorizing use by the public. *See Marcus Cable, 90 S.W.3d at 707* (public easements are those easements dedicated to public's use); *Grimes v. Corpus Christi Transmission, 829 S.W.2d 335, 337 (Tex. App.--Corpus Christi 1992, writ denied)* (easement granting State right-of-way for "highway purposes"). Furthermore, the Texas Supreme Court has held that the interests of the public, no matter how laudable they may be, do not warrant disregarding express easement terms to enlarge its purpose beyond those intended by the contracting parties. *Marcus Cable, 90 S.W.3d at 706*.

The District has failed to show that the Defendants' construction of the bridge covering violated the [**24] District's rights as expressly provided in the easement or those rights reasonably necessary to accomplish the purpose of the easement, namely, "constructing, maintaining, operating, repairing, and reconstructing a drainage canal[.]" The District has not provided any evidence to create a fact issue as to whether the construction of the bridge covering infringed on its rights pursuant to the easement. Accordingly, the record in this case warrants summary judgment in the Defendants' favor on the District's claims that its easement was violated. Because we conclude that the trial court could have properly granted the Defendants' no-evidence summary judgment motion, we need not reach Defendants' traditional summary judgment grounds motion.

We overrule the District's first issue.

**C. Trespass**

In its second issue, the District argues that the trial court erred in granting summary judgment in favor of the Defendants on the "District's trespass claim."

The Defendants addressed trespass in both its traditional and no-evidence summary judgment points. Under the no-evidence grounds, the Defendants argued that, to recover on a trespass claim, the District would have to show that the Defendants made [**25] an unauthorized entry onto property owned by the District. The Defendants contended that the District had no evidence that it owned the property at issue or that the Defendants made an unauthorized entry. Also, to the extent that the District relied on its regulations to support the trespass allegation, the Defendants argued in their no-evidence points that the District had no evidence that its regulations were lawfully adopted.

In its brief, in support of its trespass claim, the District asserts that "Lily Gardens does not own the culvert in fee simple and the covering constitutes a physical trespass without the District's consent." The District points out that the summary judgment record "conclusively establishes the existence of a physical structure built by Lily Gardens upon the District's easement," and the District summarily argues, "The presence of [the bridge covering] structure constitutes a trespass as a matter of law."

To prevail on a trespass claim, the plaintiff has the burden to prove (1) his right of ownership of the property or a [*313] lawful right of possession, and (2) an entry by the defendant. *Cain v. Rust Indus. Cleaning Servs., Inc., 969 S.W.2d 464, 470 (Tex. App.--Texarkana 1998, pet denied).* [**26] "*Unlike a possessory interest in land*, an easement is a *nonpossessory interest* that authorizes its holder to use the property for only particular purposes." *Marcus Cable, 90 S.W.3d at 700* (emphasis added). "An easement does not convey title to property." *Flynn, 228 S.W.3d at 658*. In other words, an easement does not convey to the easement holder an ownership or possessory interest. *See id*. Because, as a matter of law, the District cannot establish the first element of trespass (ownership or right of possession), its claim necessarily fails.

Lastly, the District attempts to support its trespass claim with its own rules and regulations. The District asserted that the legislature authorized it to enact rules and a permitting system and that House Bill 2959 of the 77th Texas Legislative Session expanded the District's ability to regulate and improve drainage and flood prevention within the district. *See* Tex. H.B. 2959, 77th Leg., R.S. (2001) (enrolled). The Legislature cannot, however, change a nonpossessory easement interest into a possessory interest or title ownership, as would be required to maintain a trespass action against the Defendants, without compensating a private landowner. [**27] *See, e.g., Nollan v. Ca. Coastal Com'm, 483 U.S. 825, 107 S.Ct. 3141, 97 L. Ed. 2d 677 (1987)*.

Accordingly, the trial court did not err by granting summary judgment in the Defendants' favor on the District's trespass claim.

We overrule the District's second issue.

## Attorney's Fees

In its third issue, the District argues that the trial court erred in awarding the Defendants attorney's fees for two reasons: (1) the Defendants were not entitled to fees because they were not entitled to judgment under the Declaratory Judgments Act; and (2) the Defendants did not timely supplement their responses to the District's request for production of documents regarding fees.

### A. Attorney's Fees Under Declaratory Judgment Act

The District argues that, "because Lily Gardens is not entitled to judgment under the Declaratory Judgments Act, it may not recover fees under the statute." The District seems to be arguing that only a party who prevails on his own declaratory judgment cause of action may recover attorney's fees. To the contrary, it is well established that the trial court may award attorney's fees to any party under the Declaratory Judgment Act.

*Section 37.009 of the Texas Civil Practice and Remedies Code*, addressing [**28] costs and fees under the Declaratory Judgment Act, provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *TEX. CIV. PRAC. & REM. CODE ANN. § 37.009* (Vernon 2008). The grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985)*. In the exercise of its discretion to award attorney's fees in declaratory judgment action, the trial court may award attorney's fees

to the prevailing party, may decline to award attorney's fees to either party, or may award attorney's fees to the nonprevailing party, regardless of which party sought declaratory judgment. *Ochoa v. Craig, 262 S.W.3d 29, 33 (Tex.* [*314] *App.--Dallas 2008, pet. denied).* Thus, contrary to the District's assertion, it is well established that attorney's fees under *section 37.009* are not conditioned upon a party's prevailing on its own declaratory claim.

The authority cited by the District does not support its position. [6] Because the District [**29] has not clearly established an abuse of discretion, we may not disturb the trial court's award.

> [6] The District cites *Cytogenix, Inc. v. Waldroff* and *McDowell v. McDowell* for the proposition that, because the Defendants were not entitled to judgment under the Declaratory Judgment Act, it may not recover under *Section 37.009. Cytogenix* involved a traditional breach of contract claim in which the party was not awarded actual damages. *See Cytogenix, 213 S.W.3d 479, 489-90 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). Cytogenix* suggested the Declaratory Judgment Act as an alternative basis for attorney's fees, and the Court held that, "A party may not . . . couple a declaratory plea with a damages action just to recover attorney's fees." *Id. at 490.* In *McDowell*, the San Antonio Court of Appeals reversed an award of attorney's fees where declaratory judgment was not pled as a cause of action. *See McDowell, 143 S.W.3d 124, 131 (Tex. App.--San Antonio 2004, pet. denied).* [**30] Both cases are distinguishable from the present case because, here, declaratory relief was pled and pursued as an actual theory of relief. Thus, neither authority supports reversal of attorney's fees in the present case.

## B. Failure to Supplement Discovery Record

The District argues that the trial court's award of attorney's fees to the Defendants was improper because the Defendants "did not timely supplement [their] responses to the District's request for production of documents[.]" Specifically, the District alleges that the trial court should have excluded the evidence of attorney's fees under *Texas Rule of Civil Procedure 193.6* because evidence was not timely produced and there was no showing of good cause or a lack of unfair surprise or prejudice. *See TEX. R. CIV. P. 193.6.*

In its brief, the District fails to specify what testimony, documents, or other evidence the trial court improperly admitted and has thus waived this issue for improper briefing. *See TEX. R. APP. P. 38.1(h); Garza v. Tex. Alcoholic Beverage Comm'n, 138 S.W.3d 609, 618 (Tex. App.--Houston [14th Dist.] 2004, no pet.)* (holding appellant waived complaint that court improperly admitted testimony and documents untimely [**31] produced or disclosed during discovery because he cited only one example of improperly admitted evidence and otherwise failed to specify which evidence was improperly admitted).

The District does not allege that the Defendants failed to properly designate their counsel as an expert witness on attorney's fees. Rather, the District acknowledges that the Defendants requested attorney's fees and provided summary judgment evidence in support of the figures claimed at that point of time. Specifically, the Defendants provided the affidavit of their counsel created on November 6, 2006. The affidavit included the hourly billing rate sought, the summary of the work performed up to that time, an opinion regarding the reasonable and necessary cost of the services provided and the services that would be required in the event of an appeal, and the total fees as of that time. The trial court granted the Defendants' summary judgment but left open the issue of attorney's fees so that a hearing could be held. Between the time of the Defendants motion for summary judgment on November 6, 2006 and the hearing on attorney's fees on April 17, 2007, the Defendants incurred additional fees in corresponding [**32] with and addressing the issues raised by the District. Thus, the change to the requested attorney's fees [*315] was merely due to their continuation of their work on the case to address issues raised and to prepare for the hearing on attorney's fees. We cannot conclude the trial court abused its discretion by determining that the District was not unfairly surprised. *See TEX. R. CIV. P. 193.6(a)(2).*

We overrule the District's third issue.

## Conclusion

We affirm the trial court's summary judgment.

George C. Hanks

Justice

Panel consists of Justices Alcala, Hanks, and Wilson. [7]

> [7] The Honorable Davie L. Wilson, retired Justice, First Court of Appeals, participating by assignment.

Justice Wilson, dissenting.

**DISSENT BY:** Davie L. Wilson

**DISSENT**

**DISSENT FROM OPINION ON REHEARING**

Because I believe the District has produced more than a scintilla of evidence that raises a genuine issue of material fact, I respectfully dissent.

The word "may" as used in the easement language contemplates future events which by their nature are speculative. The pictures of the bridge covering are in and of themselves sufficient to raise a fact issue (i.e., showing that the bridge covering includes walls on the side of the bridge that prevent people and [**33] machinery from reaching down off of the bridge into the waterway below). In my judgment, expert testimony is not necessary to reach the conclusion that some future event "may" require access to the top of the bridge/culvert by the District to make repairs and/or improvements to the canal directly below due to circumstances that "may injure, endanger, or interfere with the . . . maintenance and repair of said drainage canal" as in the language of the easement.

It is within the common knowledge of all that to work on the large pipes seen in the pictures might require the use of equipment that may need to be placed on the top of the bridge/ culvert. To insist the District come forth with exacting evidence to make the future certain asks for more than the burden required by law.

Further, to reach its conclusions, it appears the majority must necessarily believe that the top of the bridge/ culvert is not in the easement. This result flows from a narrow interpretation of the easement language which I do not believe is supported by the law as outlined in the original opinion. Because I would stand on the original opinion of the court, return the case below for further consideration of the merits [**34] of the issues presented, I respectfully dissent.

Davie L. Wilson

Justice, Retired

Panel consists of Justices Alcala, Hanks, and Wilson. [1]

> [1] The Honorable Davie L. Wilson, retired Justice, First Court of Appeals, participating by assignment.



**LAURI SMITH AND HOWARD SMITH, PETITIONERS, v. PATRICK W. Y. TAM TRUST, RESPONDENT**

**NO. 07-0970**

**SUPREME COURT OF TEXAS**

*296 S.W.3d 545*; *2009 Tex. LEXIS 822*; *53 Tex. Sup. J. 54*

**August 29, 2008, Argued**
**October 23, 2009, Opinion Delivered**

**PRIOR HISTORY:** [**1]
ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS.
*Smith v. Patrick W.Y. Tam Trust, 235 S.W.3d 819, 2007 Tex. App. LEXIS 6022 (Tex. App. Dallas, 2007)*

**COUNSEL:** For Smith, Lauri, PETITIONER: Mr. Robert D. Ranen, Ranen & Netzer, LLP, Plano TX.

For Patrick W.Y. Tam Trust, RESPONDENT: Mr. Scott E. Hayes, Mr. Michael Wayne Massiatte, Vincent | Moye, P.C., Dallas TX.

**JUDGES:** CHIEF JUSTICE JEFFERSON delivered the opinion of the Court.

**OPINION BY:** Wallace B. Jefferson

**OPINION**

[*546] The reasonableness of attorney's fees is generally an issue for the trier of fact. In *Ragsdale v. Progressive Voters League*, however, we held that a court may award attorney's fees as a matter of law when the testimony on fees "'is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon.'" *Ragsdale, 801 S.W.2d 880, 882 (Tex. 1990)*

(quoting *Cochran v. Wool Growers Cent. Storage Co., 140 Tex. 184, 166 S.W.2d 904, 908 (Tex. 1942))*. We must decide whether *Ragsdale* authorizes a court to award fees as a matter of law when a jury awards roughly one-third of the damages sought and no attorney's fees. Because, under such circumstances, a court's award of the full amount of fees sought is unreasonable, we reverse in part the court of appeals' judgment and remand to the trial court for a new trial on attorney's fees.

**I**

**Factual and Procedural Background**

The Patrick W. Y. Tam Trust owns a shopping center in [**2] Collin County. The Trust leased space to Independent Quality Wholesale, Inc. d/b/a Plano Pets & Grooming, with Lauri and Howard Smith as guarantors. When Plano Pets stopped making payments, the Trust sued Plano Pets [1] and the Smiths, seeking $ 215,391.50 in damages and $ 47,438.75 in attorney's fees.

> 1  The Trust nonsuited Plano Pets after the company filed bankruptcy.

At trial, Scott Hayes, the Trust's attorney, testified that a reasonable fee for the preparation and trial of the case would be $ 47,438.75, plus $ 15,000 for appeals, for a total of $ 62,438.75. To support his testimony, Hayes offered the legal bills of several other attorneys in his firm. The Smiths unsuccessfully objected that the bills

were hearsay but did not otherwise challenge the Trust's evidence.

The jury found the Smiths liable and awarded the Trust $ 65,000 in damages but no attorney's fees. The Trust moved to enter judgment on the jury's liability and damages answers and to disregard the jury's refusal to award attorney's fees. The trial court rendered judgment that the Trust receive the $ 65,000 the jury awarded, and rendered judgment notwithstanding [*547] the verdict on attorney's fees: $ 7,500 for fees incurred through [**3] trial and up to $ 15,000 in attorney's fees for success at various stages of appeal. Both sides appealed.

The court of appeals vacated the $ 7,500 attorney's fee award and rendered judgment for $ 47,438.75 instead, holding that "[b]ecause the Trust presented competent, uncontroverted evidence of its right to attorney's fees and because the Smiths did not challenge the amount, nature, or necessity of these fees . . . the trial judge abused his discretion in awarding $ 7,500." *235 S.W.3d 819, 828* (citing *Ragsdale, 801 S.W.2d at 881*). The court of appeals affirmed the remainder of the judgment. *Id. at 829*. We granted the Smiths' petition for review. *51 Tex. Sup. Ct. J. 980, 987 (June 9, 2008)*.

## II

**Discussion**

"A person may recover reasonable attorney's fees . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." *TEX. CIV. PRAC. & REM. CODE § 38.001(8)*. If attorney's fees are proper under *section 38.001(8)*, the trial court has no discretion to deny them. *See Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998)* (holding that statutes providing that a party "may recover" attorney's fees are not discretionary). Generally, the party seeking [**4] to recover attorney's fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991)*.

The reasonableness of attorney's fees is ordinarily left to the factfinder, and a reviewing court may not substitute its judgment for the jury's. *Barker v. Eckman, 213 S.W.3d 306, 314 (Tex. 2006)*; *Ragsdale, 801 S.W.2d at 881*. In *Ragsdale*, we held that "[i]n awarding attorney's fees the trial court, as the trier of fact, must take into account various factors such as: the nature and complexity of the case; the nature of the services

provided by counsel; the time required for trial; the amount of money involved; the client's interest that is at stake; the responsibility imposed upon counsel; and the skill and expertise required." *Ragsdale, 801 S.W.2d at 881*. We noted that generally, "'the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury.'" *Id. at 882* (quoting *Cochran, 166 S.W.2d at 908*). But we recognized that there was "'an exception to this rule, which is that where the testimony of an interested witness is not contradicted by any other witness, or attendant [**5] circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law.'" *Id.* (quoting *Cochran, 166 S.W.2d at 908*). "The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Id.* Because the attorney's fees evidence met those requirements, we rendered judgment for $ 22,500 in attorney's fees and affirmed the $ 40,000 damages award. *Id.*

Relying on *Ragsdale*, the court of appeals in this case rendered judgment as a matter of law, holding that the Trust's attorney's fee evidence was competent, uncontroverted, and unchallenged. *235 S.W.3d at 828-29*. But *Ragsdale* recognized that its rule would not apply whenever attorney's fees testimony is undisputed:

> [W]e do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed. For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, [*548] or its belief is questionable, [**6] then such evidence would only raise a fact issue to be determined by the trier of fact.

*Ragsdale, 801 S.W.2d at 882*. We also cautioned that the factfinder had to consider "the amount of money involved." *Id. at 881*; *see also Wayland v. City of Arlington, 711 S.W.2d 232, 233 (Tex. 1986)* ("One of the factors in determining the reasonableness of attorney's fees is the amount of damages awarded."). Seven years later, we added a corollary: the factfinder should consider

"the amount involved and the results obtained," among other things. *Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997)*.

Here, the Trust sought over $ 200,000 in damages, but the jury awarded only $ 65,000. The Trust asked for a maximum of $ 62,438.75 in attorney's fees; the jury awarded nothing. The court of appeals held that fees were established as a matter of law. *See Ragsdale, 801 S.W.2d at 882*. But the fee, though supported by uncontradicted testimony, was unreasonable in light of the amount involved and the results obtained, and in the absence of evidence that such fees were warranted due circumstances unique to this case. *Cf. Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)* (holding that "'the degree [**7] of the plaintiff's overall success goes to the reasonableness' of a fee award" and "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'") (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 793, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989)*; *Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*). Although the Trust sought some $ 215,000 in damages, the jury found that "the amount involved" was much lower--$ 65,000. The jury then decided that the Trust was entitled to no fees (which must be reversed for reasons explained below).

The Trust complains that the Smiths' failure to request a jury instruction on the *Arthur Andersen* factors waives their right to complain about the fee award. But the jury's fee award is not at issue here. The court of appeals awarded the full amount requested, despite the jury's rejection of a substantial portion of the damages sought. Those fees, even though supported by uncontradicted testimony, may not be awarded by a court as a matter of law.

We have held that the *Arthur Andersen* factors apply to fee awards made by trial courts, not just juries. *Young v. Qualls, 223 S.W.3d 312, 314 (Tex. 2007)*. We see no reason why [**8] they would not apply--as the *Ragsdale* factors do--to an appellate court's assessment of whether fees were established as a matter of law. Because the fee is unreasonable in light of the amount involved and the results obtained, the evidence did no more than raise a fact issue to be decided by the jury. *See Ragsdale, 801 S.W.2d at 882*.

The jury, however, awarded nothing. Although it could have rationally concluded that, in light of the amount involved and the results obtained, a reasonable fee award was less than the full amount sought, no evidence supported the jury's refusal to award any attorney's fees (as the court of appeals correctly noted). *235 S.W.3d at 829*. The trial court could have directed the jury to reform its verdict, *see TEX. R. CIV. P. 295*, but the court was not free to set a reasonable fee on its own. Accordingly, the Smiths are entitled to a new trial on attorney's fees.

On retrial, the evidence may support a similar fee award, but that is a matter within the jury's purview. *See Young, 223 S.W.3d at 315* ("It may be that, upon consideration of the correct results obtained, this evidence would be factually sufficient to support a like fee award."). On this record, the [**9] Trust is not entitled to its fees [*549] as a matter of law. Because the court of appeals concluded otherwise, we reverse its judgment as to attorney's fees and remand that part of the case to the trial court for a new trial. *TEX. R. APP. P. 60.2(d)*.

Wallace B. Jefferson

Chief Justice

Opinion Delivered: October 23, 2009



**TONY GULLO MOTORS I, L.P. AND BRIEN GARCIA, PETITIONERS, v. NURY CHAPA, RESPONDENT**

**NO. 04-0961**

**SUPREME COURT OF TEXAS**

*212 S.W.3d 299*; *2006 Tex. LEXIS 1301*; *50 Tex. Sup. J. 278*

**October 19, 2005, Argued**
**December 22, 2006, Opinion Delivered**

**SUBSEQUENT HISTORY:** [**1] Released for Publication February 23, 2007.
Rehearing denied by *Tony Gullo Motors I, L.P. v. Chapa, 2007 Tex. LEXIS 165 (Tex., Feb. 23, 2007)*
On remand at, Remanded by *Chapa v. Tony Gullo Motors I, L.P., 2007 Tex. App. LEXIS 5870 (Tex. App. Beaumont, July 26, 2007)*
On remand at, Remanded by *Chapa v. Tony Gullo Motors I, L.P., 2007 Tex. App. LEXIS 9543 (Tex. App. Beaumont, Dec. 6, 2007)*

**PRIOR HISTORY:** ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE NINTH DISTRICT OF TEXAS.
*Chapa v. Tony Gullo Motors I, L.P., 2004 Tex. App. LEXIS 7751 (Tex. App. Beaumont, Aug. 26, 2004)*

**COUNSEL:** For PETITIONER: The Honorable Craig T. Enoch, Ms. Melissa Anne Prentice, Mr. Alejandro Sin Valdes, Ms. Roxanne T. L. Wilson, WINSTEAD SECHREST & MINICK, P.C., Austin, TX; Mr. Joe Michels, Jr., WINSTEAD SECHREST & MINICK, P.C., The Woodlands, TX; Mr. William T. Green, III, Houston, TX.

For RESPONDENT: Ms. Kristin Bays, Mr. J. Randal Bays, BAYS & BAYS, Conroe, TX.

**JUDGES:** JUSTICE BRISTER delivered the opinion of the Court, in which CHIEF JUSTICE JEFFERSON, JUSTICE HECHT, JUSTICE WAINWRIGHT, JUSTICE GREEN, and JUSTICE WILLETT joined. JUSTICE JOHNSON filed a concurring opinion. JUSTICE O'NEILL filed a dissenting opinion. JUSTICE MEDINA did not participate in the decision.

**OPINION BY:** Scott Brister

**OPINION**

[*303] Nury Chapa bought a Toyota Highlander from Tony Gullo Motors for $ 30,207.38; they disagree what model of the car was involved. After a two-day trial, the six jurors answered 15 questions concerning breach of contract, fraud, and the DTPA [1] in Chapa's favor. They also found a difference in value of the two models of $ 7,213, mental anguish damages of $ 21,639, exemplary damages of $ 250,000, and attorney's fees of $ 20,000.

> 1 *See* Texas Deceptive Trade Practices-Consumer Protection Act, *TEX. BUS. & COM. CODE §§ 17.41-.63* ("DTPA").

[**2] The trial court disregarded the mental anguish and exemplary awards on the ground that Chapa's only claim was for breach of contract, and the fee award because Chapa had not segregated fees attributable to that claim alone. In a *per curiam* memorandum opinion, the Ninth Court of Appeals disagreed with both conclusions, reinstating all the awards but reducing exemplary damages to $ 125,000.

We agree that Chapa could assert her claim in several forms, but disagree that she could recover in all of them. Further, the court of appeals' judgment included exemplary damages exceeding the bounds of constitutional law and attorney's fees exceeding the bounds of Texas law. Accordingly, we reverse and remand for further proceedings.

## I. Election of Remedies

In entering judgment for Chapa on all her contract, fraud, and DTPA claims, the court of appeals violated the one-satisfaction rule. "There can be but one recovery for one injury, and the fact that . . . there may be more than one theory of liability[] does not modify this rule." [2]

> 2 *Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 8, 35 Tex. Sup. Ct. J. 206 (Tex. 1991).*

[**3] Chapa alleged only one injury -- delivery of a base-model Highlander rather than a Highlander Limited. While she could certainly plead more than one theory of liability, she could not recover on more than one. [3]

> 3 *See Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.,747 S.W.2d 785, 787, 31 Tex. Sup. Ct. J. 310 (Tex. 1988)* ("When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief."); *see also TEX. BUS. & COM. CODE § 17.43* (providing that "no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice"); *Gunn Infiniti, Inc. v. O'Byrne, 996 S.W.2d 854, 862 (Tex. 1999)*(holding plaintiff must elect recovery under either DTPA or fraud after remand).

[*304] For breach of contract, Chapa could recover economic damages and attorney's fees, but [**4] not mental anguish or exemplary damages. [4] For fraud, she could recover economic damages, mental anguish, and exemplary damages, but not attorney's fees. [5] For a DTPA violation, she could recover economic damages, mental anguish, and attorney's fees, but not additional damages beyond $ 21,639 (three times her economic damages). [6] The court of appeals erred by simply awarding them all.

> 4 *See Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 72, 40 Tex. Sup. Ct. J. 290 (Tex. 1997)* (holding mental anguish and exemplary damages unavailable for breach of contract).
>
> 5 *See New Amsterdam Cas. Co. v. Texas Indus., 414 S.W.2d 914, 915, 10 Tex. Sup. Ct. J. 357 (Tex. 1967)* (stating that "attorney's fees are not recoverable either in an action in tort or a suit upon a contract unless provided by statute or by contract between the parties"); *see also Neeley v. Bankers Trust Co. of Texas, 757 F.2d 621, 633 (5th Cir. 1985).*
>
> 6 *See TEX. BUS. & COM. CODE § 17.50(b)(1).* For acts committed intentionally, a consumer may recover additional damages up to three times the amount of economic and mental anguish damages combined, *see id.*; with regard to the DTPA, Chapa only requested and obtained a jury finding that Gullo Motor's violations were committed knowingly.

[**5] But as Chapa was the prevailing party, she is still entitled to judgment on the most favorable theory supported by the pleadings, evidence, and verdict. [7] Gullo Motors does not challenge the jury's breach of contract or economic damages findings in this Court. Accordingly, the only question before us is whether Chapa is entitled to anything more.

> 7 *See Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 566, 45 Tex. Sup. Ct. J. 724, 45 Tex. Sup. Ct. J. 793 (Tex. 2002); Boyce Iron Works, 747 S.W.2d at 787 (Tex. 1988).*

## II. Mere Breach of Contract

Gullo Motors argues that Chapa's only claim is in contract, as the parties' only dispute is whether she contracted for a base-model Highlander or Highlander Limited. "An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." [8] Similarly, "the usual view is that mere breach of contract is not fraud and that it may not be evidence of fraud." [9]

> 8 *Ashford Dev., Inc. v. US Life Real Estate Serv. Corp., 661 S.W.2d 933, 935, 27 Tex. Sup. Ct. J. 118 (Tex. 1983)*(citations omitted).

[**6]

> 9 *Thigpen v. Locke, 363 S.W.2d 247, 252, 6 Tex. Sup. Ct. J. 157 (Tex. 1962).*

But Chapa alleged more than a mere breach of contract; her complaint was not just that Gullo Motors failed to deliver a Highlander Limited, but that it never intended to do so. A contractual promise made with no intention of performing may give rise to an action for fraudulent inducement. [10] The duty not to fraudulently procure a contract arises from the general obligations of law rather than the contract itself, and may be asserted in tort even if the only damages are economic. [11]

> 10   *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41, 46, 41 Tex. Sup. Ct. J. 289 (Tex. 1998)*(quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 597, 35 Tex. Sup. Ct. J. 342 (Tex. 1992))*.
>
> 11
>
> *See id. at 46-47.*

Gullo Motors argues that Chapa cannot bring a fraudulent inducement claim because she was not [**7] promised a car she did not want, but one that she did. But a party may bring a fraudulent inducement [*305] claim even if the terms of the promise are later subsumed into a contract. [12] In all such cases, the liability of the defendant on the contract does not absolve it from liability in tort damages too. [13]

> 12   *See id. at 47* (citing *Graham v. Roder, 5 Tex. 141, 149 (1849))*.
>
> 13
>
> *See id.*; *Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 436, 29 Tex. Sup. Ct. J. 280 (Tex. 1986).*

Similarly, while the failure to deliver a Highlander Limited would not alone violate the DTPA, [14] Chapa's claim was that Gullo Motors represented she would get one model when in fact she was going to get another. While failure to comply would violate only the contract, the initial misrepresentation violates the DTPA. [15]

> 14   *See Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14, 39 Tex. Sup. Ct. J. 296 (Tex. 1996).*
>
> 15   *See TEX. BUS. & COM. CODE §§ 17.46(b)(7)* (defining deceptive acts to include "representing that . . . goods are of a particular style or model, if they are of another"), *17.46(b)(24)*(defining deceptive acts to include

"failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed").

[**8] Of course, Chapa was required not just to plead but to prove her claims. Proving that a party had no intention of performing at the time a contract was made is not easy, as intent to defraud is not usually susceptible to direct proof. [16] Breach alone is no evidence that breach was intended when the contract was originally made. [17] Similarly, denying that an alleged promise was ever made is not legally sufficient evidence of fraudulent inducement. [18] Usually, successful claims of fraudulent inducement have involved confessions by the defendant or its agents of the requisite intent. [19]

> 16   *See Spoljaric, 708 S.W.2d at 435.*
>
> 17   *See id.* ("Failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made."); *Formosa Plastics, 960 S.W.2d at 48*; *Schindler v. Austwell Farmers Co-op., 841 S.W.2d 853, 854, 36 Tex. Sup. Ct. J. 84 (Tex. 1992)* (per curiam) (finding failure to pay amount due was not fraud); *Crim Truck, 823 S.W.2d at 597.*
>
> 18   *See Miga v. Jensen, 96 S.W.3d 207, 210-11, 46 Tex. Sup. Ct. J. 89 (Tex. 2002)*; *T.O. Stanley Boot Co., Inc. v. Bank of El Paso, 847 S.W.2d 218, 222, 36 Tex. Sup. Ct. J. 259 (Tex. 1992)* (stating that denial of making promise was "a factor" but "does not constitute evidence that the Bank never intended to perform its promise"); *Spoljaric, 708 S.W.2d at 435* ("Failure to perform . . . is a circumstance to be considered with other facts to establish intent."). *But see Thigpen v. Locke, 363 S.W.2d 247, 252, 6 Tex. Sup. Ct. J. 157 (Tex. 1962)* ("[S]ubsequent breach is not evidence that may be considered in determining whether or not there was fraud in the original transaction.").
>
> [**9]
>
> 19   *See, e.g., Formosa Plastics, 960 S.W.2d at 48* (noting that defendant's civil department director admitted that defendant had acted deceptively and had no intention of performing a key contractual promise at the time it was made); *Spoljaric, 708*

*S.W.2d at 434-35* (noting that defendant denied he ever approved a bonus contract, but corporate secretary testified that he did).

But while breach alone is no evidence of fraudulent intent, breach combined with "slight circumstantial evidence" of fraud is enough to support a verdict for fraudulent inducement. [20] We believe Chapa met that standard here.

> 20   *Spoljaric, 708 S.W.2d at 435.*

At trial, Chapa testified that she signed a contract listing a Highlander Limited, but that Gullo Motors personnel "snatched" the contract from her after she signed it, and must have destroyed it later. She also testified that the signatures [**10] on at least four documents were forged, and that [*306] some were forgeries of her deceased husband's signature rather than her own. In light of the favorable verdict, we must assume the jury credited this testimony. [21]

> 21   *See City of Keller v. Wilson, 168 S.W.3d 802, 819-20, 48 Tex. Sup. Ct. J. 848 (Tex. 2005).*

Spoliation of evidence normally supports an inference only that the evidence was unfavorable, [22] not that it was created *ab initio* with fraudulent intent. But as the evidence here was part of the original contracting process, it provides some circumstantial evidence of fraud in that process.

> 22   *See Trevino v. Ortega, 969 S.W.2d 950, 953, 41 Tex. Sup. Ct. J. 907 (Tex. 1998)*(holding spoliation best addressed not by independent cause of action but by inference that evidence was unfavorable).

Further, the only contract introduced at trial listed [**11] the car sold as a "2002 Toyota"; although Gullo Motors prepared the contract, it offered no explanation why the box for indicating the model was left blank. Although the contract listed a vehicle identification number that matched the base-model Chapa ultimately received, there was evidence that Gullo Motors did not contract for that car until several days after Chapa signed the contract, and thus must have added it later. [23] And when Chapa's first attorney offered to return the car for a refund, Gullo Motors refused on the ground that it had already been titled, although evidence at trial suggested that did not occur until several days later.

23   Chapa also argues that Gullo Motors' agreement after the dispute arose to install certain features of a Highlander Limited in her base-model is some evidence of its earlier fraudulent intent. We disagree; if efforts to satisfy a consumer after a dispute arises are some evidence of fraud, sellers will be loathe to make any. *Cf. PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship, 146 S.W.3d 79, 95, 47 Tex. Sup. Ct. J. 822 (Tex. 2004)*("We should encourage sellers to attempt repairs; tolling limitations every time they do might discourage them from doing so at all.").

[**12] We recognize the need to keep tort law from overwhelming contract law, so that private agreements are not subject to readjustment by judges and juries. [24] But we long ago abandoned the position that procuring a contract by fraud was simply another contract dispute. [25] Because Chapa proved more than mere breach of contract here, we hold she was entitled to assert fraud and DTPA claims as well.

> 24   *See, e.g.*, William Powers, Jr., *The Availability of Tort Remedies for Breach of Contract: Border Wars*, 72 TEX. L. REV. 1209 (1994).
> 25   *See Formosa Plastics, 960 S.W.2d at 46-47.*

### III. Exemplary Damages

The jury found Gullo Motors had committed deceptive acts knowingly and found clear and convincing evidence that it had committed fraud. Beyond arguing that Chapa can only sue in contract, Gullo Motors does not challenge either finding. As we have rejected that argument, Chapa is entitled under the verdict to exemplary damages for either fraud or violation of the [**13] DTPA. [26]

> 26   *See TEX. CIV. PRAC. & REM. CODE § 41.003(a)* (providing for recovery of exemplary damages if claimant proves by clear and convincing evidence that harm resulted from fraud); *TEX. BUS. & COM. CODE § 17.50(b)(1)*(providing for recovery of up to three times economic damages if conduct violating DTPA was committed knowingly).

But both parties challenge the court of appeals' judgment reinstating exemplary damages but reducing

them to $ 125,000 -- Gullo Motors because the reinstatement went too far, and Chapa because it did not go far enough. Although the jury assessed exemplary damages for both fraud [*307] and deceptive acts at $ 250,000, the DTPA caps those damages at $ 21,639 (three times Chapa's economic loss of $ 7,213), [27] while the fraud award is capped at $ 200,000. [28] Accordingly, the court of appeals' opinion and the parties' briefs address only whether the exemplary damages were properly awarded based on fraud.

27  *TEX. BUS. & COM. CODE § 17.50(b)(1).* The same statutory provision limits additional damages to three times economic and mental anguish damages if conduct is committed *intentionally*, *id.*, but Chapa only requested a jury finding whether Gullo Motors' committed deceptive acts *knowingly*.

28  *TEX. CIV. PRAC. & REM. CODE § 41.008(b)*(capping exemplary damages at the greater of (1) noneconomic damages plus two times economic damages, or (2) $ 200,000).

## A

As an initial matter, Chapa asserts that three grounds preclude our constitutional review of the exemplary damages award. First, she argues this Court lacks jurisdiction to consider whether exemplary damages are constitutionally excessive. While the excessiveness of damages as a factual matter is final in the Texas courts of appeals, [29] the constitutionality of exemplary damages is a legal question for the court. [30] We have conducted such analyses before. [31] Moreover, the Supreme Court of the United States has found unconstitutional a state constitutional provision limiting appellate scrutiny of exemplary damages to no-evidence review. [32] Only by adhering to our practice of reviewing exemplary damages for constitutional (rather than factual) excessiveness can we avoid a similar constitutional conflict.

29  *See Alamo Nat'l. Bank v. Kraus, 616 S.W.2d 908, 910, 24 Tex. Sup. Ct. J. 343 (Tex. 1981).*

30

*See Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43, 45, 41 Tex. Sup. Ct. J. 877 (Tex. 1998); see also Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424,*

*436-37, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001)*(requiring de novo appellate review of exemplary damages because "the level of punitive damages is not really a 'fact' 'tried ' by the jury")(citation omitted).

31  *See Bentley v. Bunton, 94 S.W.3d 561, 607, 45 Tex. Sup. Ct. J. 1172 (Tex. 2002)* (finding exemplary damages were not constitutionally excessive, but remanding for reassessment in light of reduced mental anguish award); *Malone, 972 S.W.2d at 45-48* (finding exemplary damages were not constitutionally excessive).

32  *Honda Motor Co., Ltd. v. Oberg , 512 U.S. 415, 418, 426-27, 114 S. Ct. 2331, 129 L. Ed. 2d 336 (1994)* ("An amendment to the Oregon Constitution prohibits judicial review of the amount of punitive damages awarded by a jury 'unless the court can affirmatively say there is no evidence to support the verdict.' The question presented is whether that prohibition is consistent with the *Due Process Clause of the Fourteenth Amendment*. We hold that it is not.").

Second, Chapa claims that by authorizing up to $ 200,000 in exemplary damages, the Legislature necessarily rendered that amount constitutionally permissible. But while "state law governs the amount properly awarded as punitive damages," that amount is still "subject to an ultimate federal constitutional check for exorbitancy." [33]

33  *Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 431 n.12, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996)*; *Malone, 972 S.W.2d at 45* ("[E]ven if an assessment of punitive damages is not deemed excessive under governing state law, it may violate a party's substantive due process right to protection from 'grossly excessive' punitive damages awards.").

Third, Chapa argues that she is entitled to the jury's entire exemplary damage award because the trial court complied with the procedural protections required by the *Due Process Clause*. But the constitutional limitations on such awards are substantive as well as procedural. [34] [*308] Even if the procedural processes [**17] were perfect, "[t]o the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." [35]

34  *State Farm Mut. Auto. Ins. Co. v. Campbell,*

*538 U.S. 408, 418, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003)*; *Cooper Indus.,532 U.S. at 433*; *Oberg, 512 U.S. at 420* ("Our recent cases have recognized that the Constitution imposes a substantive limit on the size of punitive damages awards."); *TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 453-54, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993)*.

35 *Campbell, 538 U.S. at 417.*

## B

We review not whether the exemplary damage award is exorbitant (as the dissent says), but whether it is constitutional. In reviewing the amount of an exemplary damage award for constitutionality, we have been directed to consider three "guideposts": (1) the nature of the defendant's conduct, (2) the ratio between exemplary and compensatory damages, and (3) the size [**18] of civil penalties in comparable cases. [36]

> 36  *Id. at 418* (citing *BMW of N. Am. v. Gore, 517 U.S. 559, 575, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)*).

The reprehensibility of Gullo Motors' conduct (the most important of the guideposts) [37] depends in turn on five more factors, all but one of which weigh against exemplary damages here. [38] Gullo Motors' actions did not cause physical rather than economic harm, did not threaten the health or safety of others, and did not involve repeated acts rather than an isolated incident. Chapa claims she was financially vulnerable, but the only harm she alleged (that her SUV did not have Michelin tires and lumbar-support seats) did not threaten financial ruin. [39] Only the last factor, that the conduct at issue was deceitful rather than accidental, points in Chapa's favor. The existence of a single factor "may not be sufficient to sustain a punitive damages award." [40]

> 37  *Id. at 419* (quoting *Gore, 517 U.S. at 575*).
> [**19]
> 38  *See id.*
> 39  *Cf. Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 24, 37 Tex. Sup. Ct. J. 883 (Tex. 1994)* ("[A]n insurance carrier's refusal to pay a claim cannot justify punishment unless the insurer was actually aware that its action would probably result in extraordinary harm not ordinarily associated with breach of contract or bad faith denial of a claim-such as death, grievous physical injury, or

financial ruin.").
> 40  *Campbell, 538 U.S. at 419.*

Touching the second guidepost, the Supreme Court has declined to adopt a bright-line ratio between actual and exemplary damages, but has stated that "few awards exceeding a single-digit ratio . . . will satisfy due process." [41] Further, the Court has pointed to early statutes authorizing awards of double, treble, or quadruple damages as support for the conclusion that "four times the amount of compensatory damages might be close to the line of constitutional impropriety." [42] Here, the court of appeals' award exceeds four times Chapa's total compensatory award, and is more than 17 times her economic damages. Further, the [**20] jury's award of precisely $ 21,639 for mental anguish -- exactly three times her economic damages of $ 7,213 -- supports the Supreme Court's observation that emotional damages themselves often include a punitive element. [43] The court of appeals' judgment [*309] at least pushes against, if not exceeds, the constitutional limits.

> 41  *Id. at 425*; *Gore, 517 U.S. at 581-82.*
> 42  *Campbell, 538 U.S. at 425.*
> 43  *See id. at 426*; *see also RESTATEMENT (SECOND) OF TORTS § 908, cmt. c*, at 466 (1977)("In many cases in which compensatory damages include an amount for emotional distress, such as humiliation or indignation aroused by the defendant's act, there is no clear line of demarcation between punishment and compensation and a verdict for a specified amount frequently includes elements of both.").

Finally, we must compare the exemplary damages awarded here to civil penalties authorized in comparable cases. The [**21] Texas Occupations Code provides for a maximum civil penalty of $ 10,000 for statutory or regulatory violations by motor vehicle dealers. [44] Similarly, the attorney general could collect not more than $ 20,000 as a civil penalty under the DTPA in a case like this. [45] These are precisely the kinds of penalties for comparable misconduct the Supreme Court has used -- and says we must use -- in our constitutional analysis. [46]

> 44  *TEX. OCC. CODE § 2301.801.*
> 45  *See TEX. BUS. & COM. CODE § 17.47(c).*
> 46  *See Campbell, 538 U.S. at 428* (comparing award in bad-faith insurance case to civil penalty of $ 10,000 available under Utah law); *Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532*

*U.S. 424, 442-43, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001)* (comparing award in misappropriation case to civil penalty of $ 25,000 available under Oregon's Unlawful Trade Practices Act).

Chapa argues we should consider the possibility [**22] that Gullo Motors might be found criminally liable or lose its license for what happened here. But she provides no proof that such a sanction has ever been awarded in a case like this. "[T]he remote possibility of a criminal sanction does not automatically sustain a punitive damages award." [47]

> 47  *Campbell, 538 U.S. at 428* ("Great care must be taken to avoid use of the civil process to assess criminal penalties that can be imposed only after the heightened protections of a criminal trial have been observed, including, of course, its higher standards of proof. Punitive damages are not a substitute for the criminal process. . .").

The dissent reaches a different conclusion only by changing the constitutional standards. The Supreme Court says "repeated conduct" refers to recidivism; [48] the dissent says it means reiterating a single misrepresentation to a single consumer. [49] The Supreme Court says $ 1,000,000 in emotional anguish does not mean there are "physical injuries"; [50] the dissent [**23] says $ 21,000 in emotional anguish is enough to conclude otherwise. [51] The Supreme Court says multiplying damages by a factor of 4 is "close to the line of constitutional impropriety"; [52] the dissent says using a factor of 4.33 is unworthy of our review. [53] The Supreme Court says we must look to the civil penalties "imposed in *comparable* cases"; [54] the dissent says we should look to the general $ 200,000 cap applicable to *all* exemplary cases regardless of their nature. [55] The Supreme Court says exemplary damages "pose an acute danger of [*310] arbitrary deprivation of property"; [56] the dissent perceives no danger in pushing against the constitutional limits in all fraud cases, as the only factor present here (deceitful conduct) is present in every one.

> 48  *See, e.g., BMW of N. Am. v. Gore, 517 U.S. 559, 577, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)* ("Our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.").
>
> 49  *See*  S.W.3d at  .

[**24]

> 50  *Campbell, 538 U.S. at 426.*
> 51  *See*  S.W.3d at  .
> 52  *Campbell, 538 U.S. at 425.*
> 53   S.W.3d at  .
> 54  *Gore, 517 U.S. at 575* (emphasis added); *Campbell, 538 U.S. at 428; Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 442-43, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001).*
> 55  *See*  S.W.3d at  . The case cited by the dissent does not support its analysis. *See Gore, 517 U.S. at 583-84* (comparing award in fraud case to maximum civil penalty of $ 2,000 available under Alabama's Deceptive Trade Practices Act).
> 56  *Honda Motor Co., Ltd. v. Oberg, 512 U.S. 415, 432, 114 S. Ct. 2331, 129 L. Ed. 2d 336 (1994).*

While finding the jury verdict of $ 250,000 constitutionally excessive, the court of appeals gave no explanation for its award of half that amount. Exemplary damages are not susceptible to precise calculation, but this is still five to ten times [**25] more than comparable civil penalties, or what Chapa could recover under the consumer-friendly DTPA. [57] Pushing exemplary damages to the absolute constitutional limit in a case like this leaves no room for greater punishment in cases involving death, grievous physical injury, financial ruin, or actions that endanger a large segment of the public. [58] On this record, Gullo Motors' conduct merited exemplary damages, but the amount assessed by the court of appeals exceeds constitutional limits.

> 57  *Cf. PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship, 146 S.W.3d 79, 89, 47 Tex. Sup. Ct. J. 822 (Tex. 2004)* ("Frequently, the DTPA is pleaded not because it is the *only* remedy, but because it is the most *favorable* remedy.") (italics in original).
> 58  *See Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 24, 37 Tex. Sup. Ct. J. 883 (Tex. 1994).*

## C

The Texas Rules of Appellate Procedure provide for remittitur orders by the courts of appeals, [59] but make no similar provision for this Court. While this Court may [**26] review the constitutionality of an exemplary damages award, the amount of a suggested remittitur is in

the first instance a matter for the courts of appeals.

> 59   TEX. R. APP. P. 46.

Thus, for example, when our constitutional review in *Bentley v. Bunton* found evidentiary support for some amount of mental anguish damages but not for the $ 7 million awarded, we remanded to the court of appeals to determine an appropriate remittitur. [60] When the case returned to us after remittitur but without any reassessment of exemplary damages, we returned it again to the court of appeals to conduct a constitutional analysis of those damages in the first instance. [61]

> 60   *94 S.W.3d 561, 605-08, 45 Tex. Sup. Ct. J. 1172 (Tex. 2002).*
>
> 61   *See Bunton v. Bentley, 153 S.W.3d 50, 53-54, 48 Tex. Sup. Ct. J. 197 (Tex. 2004)* (per curiam).

Accordingly, [**27] having found that the amount awarded by the court of appeals exceeds the constitutional limitations on exemplary damages, we remand to that court for determining a constitutionally permissible remittitur.

## IV. Attorney's Fees

The jury found a reasonable and necessary attorney's fee "in this case" was $ 20,000. [62] During and after trial, Gullo Motors objected that fees were not recoverable for Chapa's fraud claim, and thus had to be excluded. We agree, and thus reverse and remand the fee issue for a new trial.

> 62   The figure represented fees only through the trial level; Chapa tendered no evidence or jury question on appellate fees.

For more than a century, Texas law has not allowed recovery of attorney's fees unless authorized by statute or contract. [63] This rule is so venerable and [*311] ubiquitous in American courts it is known as "the American Rule." [64] Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees. [65] As a result, [**28] fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not. [66]

> 63   *See, e.g., Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 567, 45 Tex. Sup. Ct. J. 724, 45 Tex. Sup. Ct. J. 793 (Tex. 2002); Dallas Cent.*

> *Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d 75, 77, 35 Tex. Sup. Ct. J. 856 (Tex. 1992); New Amsterdam Cas. Co. v. Texas Indus., Inc., 414 S.W.2d 914, 915, 10 Tex. Sup. Ct. J. 357 (Tex. 1967); Mundy v. Knutson Constr. Co., 156 Tex. 211, 294 S.W.2d 371, 373 (Tex. 1956).*
>
> 64   *See, e.g., Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res., 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)* ("In the United States, parties are ordinarily required to bear their own attorney's fees-the prevailing party is not entitled to collect from the loser. Under this 'American Rule,'" we follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority.") (internal citations omitted).
>
> 65   *Travelers Indem. Co. of Connecticut v. Mayfield, 923 S.W.2d 590, 594, 39 Tex. Sup. Ct. J. 678 (Tex. 1996).*

[**29]

> 66   *See Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73, 40 Tex. Sup. Ct. J. 290 (Tex. 1997); Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10, 35 Tex. Sup. Ct. J. 206 (Tex. 1991); Matthews v. Candlewood Builders, Inc., 685 S.W.2d 649, 650, 28 Tex. Sup. Ct. J. 284 (Tex. 1985); Int'l Sec. Life Ins. Co. v. Finck, 496 S.W.2d 544, 547, 16 Tex. Sup. Ct. J. 381 (Tex. 1973).*

We recognized an exception to this historical practice in 1991 that has since threatened to swallow the rule. In *Stewart Title Guaranty Co. v. Sterling*, we affirmed the general rule: "the plaintiff is required to show that [attorney's] fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." [67] But we then added:

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 624-25 (Tex. App.-Dallas 1987, writ denied)* [**30] . Therefore, when the causes of action involved in the suit are dependent upon the same set of

facts or circumstances and thus are "interwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims. *Gill Sav. Ass'n v. Chair King, Inc., 783 S.W.2d 674, 680 (Tex. App.-Houston [14th Dist.] 1989), modified, 797 S.W.2d 31, 34 Tex. Sup. Ct. J. 42 (Tex. 1990)*(remanded to the trial court for reexamination of attorney's fee award). [68]

As the only two authorities cited in this passage suggest, this exception had not been recognized by this Court before, but only by a few courts of appeals beginning about ten years earlier. [69] In fact, we did not even apply the exception in *Sterling* (as the fees there could be segregated), [70] and appear to have applied it only once since. [71]

> 67  *822 S.W.2d at 10.*
> 68  *Id. at 11-12.*
> 69  *See, e.g., Village Mobile Homes, Inc. v. Porter, 716 S.W.2d 543, 552 (Tex. App.-Austin 1986, writ ref'd n.r.e.); de La Fuente v. Home Sav. Ass'n, 669 S.W.2d 137, 146 (Tex. App.-Corpus Christi 1984, no writ); First Wichita Nat'l Bank v. Wood, 632 S.W.2d 210, 215 (Tex. App.-Fort Worth 1982, no writ); Wilkins v. Bain, 615 S.W.2d 314, 316 (Tex. Civ. App.-Dallas 1981, no writ).*

[**31]

> 70  *See Sterling, 822 S.W.2d at 12.*
> 71  *See Aiello, 941 S.W.2d at 73.* In *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, this Court held that the court of appeals erred in requiring segregation of fees between a valid contract and an invalid tortious interference claim, holding instead that both claims were valid. *798 S.W.2d 274, 280, 34 Tex. Sup. Ct. J. 20 (Tex. 1990).* We did not address the alternative basis for the court of appeals' ruling -- that attorney's fees are not recoverable in a tort action. *See Transcontinental Gas Pipe Line Corp., 763 S.W.2d 809, 823 (Tex. App.-Texarkana 1988).*

[*312] But the courts of appeals have been flooded with claims that recoverable and unrecoverable fees are inextricably intertwined. [72] As the exception can make all fees recoverable (even if Texas law has long said they are not), it is no surprise that more and more claimants have

sought to invoke it. Moreover, as the details of an attorney's work are shrouded in the attorney-client privilege, it may be hard for anyone else to tell whether the work on [**32] several claims truly was inextricably intertwined.

72    A Westlaw search shows more than one hundred published and unpublished opinions addressing the *Sterling* exception since 1991. *See, e.g., Ski River Dev., Inc. v. McCalla, 167 S.W.3d 121, 143 (Tex. App.-Waco 2005, pet. denied); Marrs and Smith P'ship v. D.K. Boyd Oil and Gas Co., 2005 Tex. App. LEXIS 9691, 2005 WL 3073794, *15 (Tex. App.-El Paso 2005, pet. denied); Shadow Dance Ranch P'ship, Ltd. v. Weiner, 2005 Tex. App. LEXIS 10131, 2005 WL 3295664, *9 (Tex. App.-San Antonio 2005, no pet. h.); Royal Maccabees Life Ins. Co. v. James, 146 S.W.3d 340, 353 (Tex. App.-Dallas 2004, pet. denied); Aetna Cas. & Sur. v. Wild, 944 S.W.2d 37, 40 (Tex. App.-Amarillo 1997, writ denied); Panizo v. Young Men's Christian Ass'n of the Greater Houston Area, 938 S.W.2d 163, 170 (Tex. App.-Houston [1st Dist.] 1996, no writ); Kenneth H. Hughes Interests, Inc. v. Westrup, 879 S.W.2d 229, 233 (Tex. App.-Houston [1st Dist.] 1994, writ denied).*

[**33] The exception has also been hard to apply consistently. The courts of appeals have disagreed about what makes two claims inextricably intertwined -- some focusing on the underlying facts, [73] others on the elements that must be proved, [74] and others on some combination of the two. [75] Some do not require testimony that claims are intertwined, [76] while others do. [77] When faced with fraud and breach of contract claims like those here, some have held the claims inextricably intertwined, [78] and others just the opposite. [79]

73    *See, e.g., Rio Grande Valley Gas Co. v. City of Edinburg, 59 S.W.3d 199, 224 (Tex. App.-Corpus Christi 2000) aff'd in part, rev'd in part sub nom. Southern Union Co. v. City of Edinburg, 129 S.W.3d 74, 47 Tex. Sup. Ct. J. 60 (Tex. 2003); Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1, 902 S.W.2d 488, 505 (Tex. App.-Austin 1993) aff'd in part, rev'd in part, 908 S.W.2d 415, 38 Tex. Sup. Ct. J. 817 (Tex. 1995).*
74    *See, e.g., Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture, 50 S.W.3d 531, 550-51 (Tex.*

*App.-El Paso 2001, no pet.)*; *AU Pharm., Inc. v. Boston, 986 S.W.2d 331, 337 (Tex. App.-Texarkana 1999, no pet.).*

[**34]

75  *See, e.g., Air Routing Int'l. Corp. (Canada) v. Britannia Airways, Ltd., 150 S.W.3d 682, 693 (Tex. App.-Houston [14th Dist.] 2004, no pet.).*

76  *See id.*

77  *See Royal Maccabees, 146 S.W.3d at 353.*

78  *See, e.g., Nat'l Gas Clearinghouse v. Midgard Energy Co., 113 S.W.3d 400, 417 (Tex. App.-Amarillo 2003, pet. denied); W. Beach Marina, Ltd. v. Erdeljac, 94 S.W.3d 248, 268 (Tex. App.-Austin 2002, no pet.); Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co., 3 S.W.3d 112, 131 (Tex. App.-Corpus Christi 1999, pet. denied).*

79  *See, e.g., Young v. Neatherlin, 102 S.W.3d 415, 421 (Tex. App.-Houston [14th Dist.] 2003, no pet.); Panizo v. Young Men's Christian Ass'n, 938 S.W.2d 163, 171 (Tex. App.-Houston [1st Dist.] 1996, no writ); S. Concrete Co. v. Metrotec Fin., 775 S.W.2d 446, 450-51 (Tex.App.-Dallas 1989, no writ).*

As *Sterling* suggests the need to segregate fees is a question of law, [80] the courts of appeals have generally [**35] (though not always) applied a *de novo* standard of review. [81] That standard, of course, gives no [*313] deference to the factual determinations of the trial judge or the jury. But the fees necessary to prove particular claims often turn on such facts - how hard something was to discover and prove, how strongly it supported particular inferences or conclusions, how much difference it might make to the verdict, and a host of other details that include judgment and credibility questions about who had to do what and what it was worth. Given all these details, it may often be impossible to state as a matter of law the extent to which certain claims can or cannot be segregated; the issue is more a mixed question of law and fact for the jury.

80  *See Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 12, 35 Tex. Sup. Ct. J. 206 (Tex. 1991)* ("Following a review of the record, we conclude that the attorney's fees are capable of segregation.").

81  *See, e.g., Air Routing Int'l. Corp., 150 S.W.3d at 688; Flagship Hotel, Ltd. v. City of Galveston, 117 S.W.3d 552, 565 (Tex. App.-Texarkana 2003,*

*pet. denied); Pacesetter Pools, Inc. v. Pierce Homes, Inc., 86 S.W.3d 827, 833 (Tex. App.-Austin 2002, no pet.); Aetna Cas. & Sur. v. Wild, 944 S.W.2d 37, 41 (Tex. App.-Amarillo 1997, writ denied). But see AU Pharm., Inc. v. Boston, 986 S.W.2d 331, 337 (Tex. App.-Texarkana 1999, no pet.)* (applying abuse of discretion review).

[**36]  This case illustrates several of these difficulties. The court of appeals held that Chapa was not required to segregate fees (and thus could recover 100 percent of them) because she "was required to prove essentially the same facts in pursuing each of her three causes of action." But when Chapa's attorneys were drafting her pleadings or the jury charge relating to fraud, there is no question those fees were not recoverable. Nor does Texas law permit them to be compensated for preparing and presenting evidence regarding the defendant's net worth.

Further, the effort to recover 100 percent of their fees has required Chapa's attorneys to take a position inconsistent with her underlying claims. As noted above, Chapa has insisted (and we have agreed) that her claims were more than a mere breach of contract - they could be asserted in fraud. But when it came time to segregate fees, her attorneys testified that their work on the fraud claim could not possibly be distinguished from that on the contract and DTPA claims. Having prevailed in her argument that the claims are distinct, it is hard to see how she can also claim they are inextricably intertwined.

It is certainly true that Chapa's [**37] fraud, contract, and DTPA claims were all "dependent upon the same set of facts or circumstances," [82] but that does not mean they all required the same research, discovery, proof, or legal expertise. Nor are unrecoverable fees rendered recoverable merely because they are nominal; there is no such exception in any contract, statute, or "the American Rule." To the extent *Sterling* suggested that a common set of underlying facts necessarily made all claims arising therefrom "inseparable" and all legal fees recoverable, it went too far.

82  *Sterling, 822 S.W.2d at 11.*

But *Sterling* was certainly correct that many if not most legal fees in such cases cannot and need not be precisely allocated to one claim or the other. Many of the services involved in preparing a contract or DTPA claim

for trial must still be incurred if tort claims are appended to it; adding the latter claims does not render the former services unrecoverable. Requests for standard disclosures, proof of background facts, depositions [**38] of the primary actors, discovery motions and hearings, *voir dire* of the jury, and a host of other services may be necessary whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.

Accordingly, we reaffirm the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable [*314] claim that they are so intertwined that they need not be segregated. We modify *Sterling* to that extent.

This standard does not require more precise proof for attorney's fees than for any other claims or expenses. Here, Chapa's attorneys did not have to keep separate time records when they drafted the fraud, contract, or DTPA paragraphs of her petition; an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim. [83] The court of appeals could then [**39] have applied standard factual and legal sufficiency review to the jury's verdict based on that evidence.

> [83] *See, e.g., Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73, 40 Tex. Sup. Ct. J. 290 (Tex. 1997)* (noting that claimant's attorney "testified that approximately twenty-percent of his time and fifteen-percent of his paralegal's time concerned issues predating the agreed judgment"); *Med. Specialist Group, P.A. v. Radiology Assocs., L.L.P., 171 S.W.3d 727, 738 (Tex. App.-Corpus Christi 2005, pet. denied)* ("In his affidavit, Radiology Associates' counsel. . . testified that his fees for the defense of the case totaled $ 460,087.00, and approximately forty percent of these fees were directly related to Saratoga's antitrust claims."); *Flagship Hotel, 117 S.W.3d at 566 n.7* ("Flagship argues that the segregation standard is difficult to meet. We disagree and note that segregated attorney's fees can be established with evidence of unsegregated attorney's fees and

a rough percent of the amount attributable to the breach of contract claim. *Schenck v. Ebby Halliday Real Estate, Inc., 803 S.W.2d 361, 369 (Tex. App.-Fort Worth 1990, no writ)*; *accord, Bradbury v. Scott, 788 S.W.2d 31, 40 (Tex. App.-Houston [1st Dist.] 1989, writ denied).*").

[**40] There may, of course, be some disputes about fees that a trial or appellate court should decide as a matter of law. For example, to prevail on a contract claim a party must overcome any and all affirmative defenses (such as limitations, *res judicata*, or prior material breach), and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary. But when, as here, it cannot be denied that at least some of the attorney's fees are attributable only to claims for which fees are not recoverable, segregation of fees ought to be required and the jury ought to decide the rest.

Chapa's failure to segregate her attorney's fees does not mean she cannot recovery any. Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be. [84] We have applied this same rule for lost profits, medical expenses, and attorney's fees -- an unsegregated damages award requires a remand. [85] Accordingly, remand is required.

> [84] *See Sterling, 822 S.W.2d at 12.*
> [85] *See Minnesota Mining and Mfg. Co. v. Nishika Ltd., 953 S.W.2d 733, 739, 41 Tex. Sup. Ct. J. 14 (Tex. 1997)* (lost profits); *Texarkana Mem'l Hosp., Inc. v. Murdock, 946 S.W.2d 836, 840-41, 40 Tex. Sup. Ct. J. 513 (Tex. 1997)* (medical expenses); *Sterling, 822 S.W.2d at 11-12* (attorney's fees).

[**41] **V. Conclusion**

Because the jury found in Chapa's favor on all her claims, she is entitled to recover on the most favorable theory the verdict would support. But she is not required to make that election until she knows her choices. [86]

> [86] The dissent suggests Chapa must elect between her fraud, contract, and DTPA claims *before* knowing what amount of attorney's fees she might recover. This would defeat the principle that she is entitled to recover on the most favorable theory the verdict supports. *See* n.7, *supra*.

Under either fraud or the DTPA, Chapa is entitled to $ 7,213 in economic damages and $ 21,639, in mental anguish. The court of appeals must reassess her exemplary damages, and a jury must reassess her attorney's fees. There is no rule establishing [*315] which should go first, but for practical reasons we remand first to the court of appeals. At the trial level, the most Chapa could recover under the DTPA would be additional damages of $ 21,639 (three times her economic damages) plus attorney's [**42] fees of something less than $ 20,000 (depending on the new verdict). If the court of appeals' reassessment of exemplary damages for fraud exceeds this amount, Chapa would obviously be better off electing that recovery; if not, then the court of appeals should thereafter remand to the trial court for a new trial on attorney's fees. Accordingly, we remand to the court of appeals for further proceedings consistent with this opinion.

Scott Brister

Justice

**CONCUR BY:** Phil Johnson

**CONCUR**

JUSTICE JOHNSON, concurring.

I concur in the Court's judgment, and, except for part III.B. as to Exemplary Damages, I join its opinion.

The court of appeals properly identified *State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003)* and *BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)* as guiding authorities for its review of the $ 250,000 exemplary damages jury award. It then concluded that $ 125,000 exemplary damages is constitutionally permissible under this record. That amount is between 4.33 and 4.34 times the actual damages of $ 28,852 found by the jury. The court of appeals' analysis as to the exemplary [**43] damages issue is not as detailed as that in this Court's opinion. But, because the court of appeals did not give a detailed explanation for its conclusion does not mean that its conclusion is wrong.

The United States Supreme Court has not set a bright line constitutional limit for exemplary damages. Some of its specific language bears reviewing:

We decline again to impose a bright-line ratio which a punitive damages award cannot exceed. Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards *exceeding* a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. In *Haslip*, in upholding a punitive damages award, we concluded that an award of *more than* four times the amount of compensatory damages *might be close* to the line of constitutional impropriety. *499 U.S. , at 23-24*. We cited that 4-to-1 ratio again in *Gore. 517 U.S., at 581*. The Court further referenced a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and [**44] punish. *Id., at 581*, and n. 33. While *these ratios are not binding, they are instructive*. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, *id., at 582*, or, in this case, of 145 to 1.

Nonetheless, because *there are no rigid benchmarks that a punitive damages award may not surpass*, ratios greater than those we have previously upheld may comport with due process [under certain circumstances].

*Campbell, 538 U.S. at 425* (emphasis added).

[*316] The Court says that "The court of appeals' judgment at least pushes against, if not exceeds the constitutional limits." S.W.3d . A ratio of 4.33 to 1 is clearly close to the ratio of 4 to 1 which "might be close to the line of constitutional impropriety." *Campbell, 538 U.S. at 425*. But, there are no rigid constitutional benchmarks that an exemplary damages award may not surpass. *Id*. Unless we determine that the court of appeals misapplied the standards [**45] enunciated by the Supreme Court, however, I consider a 4.33 ratio of

exemplary damages to actual damages under this record to be within the discretion lodged in the court of appeals to determine the amount of remittitur to suggest. I would remand to the court of appeals for reconsideration of the exemplary damages issue and more complete explanation of its analysis as to the remittitur. I would not instruct the court of appeals, at this juncture, that it should determine a different, more appropriate, remittitur.

Phil Johnson

Justice

**DISSENT BY:** Harriet O'Neill

**DISSENT**

JUSTICE O'NEILL, dissenting.

Nury Chapa's allegations describe what amounts to a bait-and-switch by Gullo Motors, a claim the jury and this Court agree there is evidence to support. The evidence shows that, in furtherance of that scheme, Chapa was threatened, lied to, and her signature and that of her deceased husband were forged. The defendant's conduct in this case was at best reprehensible, and bordered on criminal, prompting the jury to award $ 250,000 in exemplary damages. Texas law capped that award at $ 200,000, and the court of appeals further reduced it by remittitur to $ 125,000. Even though the remitted award is [**46] well below the statutory ceiling that the Legislature set, the Court today decides the appeals court award is exorbitant and cannot stand. I do not agree that the court of appeals violated constitutional exorbitancy standards by suggesting the remittitur that it did, nor do I agree with the Court's advisory determination of the attorney's fee issue. Accordingly, I respectfully dissent.

**I. Background**

The evidence supporting the verdict in this case demonstrates that Chapa purchased a Toyota Highlander Limited from Gullo Motors, but Gullo Motors tried to make her accept instead a less expensive Toyota Highlander. According to Chapa, she offered her salesman, Brien Garcia, $ 30,000 for the Highlander Limited on the showroom floor, with the added options of a TV/VCR and Michelin tires. After consulting with management, Garcia responded that the showroom car had been sold but he could get her one for $ 207.38 more.

Chapa agreed, but when she returned to sign the contract it only indicated she was buying a "2002 Toyota." Chapa wrote "Limited," "Michelin tires," "TV" and "VCR" on the contract and then signed it. She was told more signatures were needed and a copy would be mailed to [**47] her. Chapa never received the contract.

After sending in her $ 30,207.38 payment, Chapa received a call informing her that the vehicle had arrived. Chapa went to pick it up, but Garcia presented her with a Highlander, not a Highlander Limited. When Chapa refused to take it, Garcia acknowledged that she had purchased a Highlander Limited and assured her she would get one.

Again, a sales representative called Chapa to say her car was ready, and again a Highlander, not a Highlander Limited, was presented to her. Chapa complained, but Gullo told her the Highlander she was taking had a V-6 engine just like the Limited; in addition, Gullo promised to add the other features from the Limited, plus the Michelin tires, and assured her the modifications would be complete in two [*317] days. Chapa agreed to take delivery of the Highlander, but insisted Gullo Motors write these promises on her new delivery check sheet, which she then signed. Garcia wrote her a "We Owe" form, which stated Gullo owed her Michelin tires and lumbar seats. He did not include the other items, so Chapa listed them on the delivery check sheet; she testified Garcia told her that was enough.

When Gullo Motors failed to install [**48] the promised items, Chapa went to the dealership to speak with Brian Debiski, the sales manager. Debiski told Chapa she was "crazy, that [she] didn't buy that [Limited]." Chapa explained that she had a "We Owe" form, but Debiski responded, "[Y]ou have nothing. You are a nobody. It's your word against me." When Chapa told him she would inform the media, Debiski responded that "nobody will dare to go against me, against us," and informed Chapa that he would show her by having her car towed away at her expense.

Later, when Chapa's attorney informed the dealership that Chapa would like to return the car for a refund, Gullo refused, claiming the Highlander had already been titled to Chapa (even though it had not) and explaining that it would thus have to sell the car as used. Gullo produced a New Vehicle Delivery Check Sheet showing Chapa had accepted delivery of the Highlander without complaint. However, Chapa testified that Gullo

forged her deceased husband's signature on the delivery check sheet by using documents her late husband, Ernesto Chapa, had signed when they had previously bought a car from Gullo. Chapa also claimed that Gullo forged her deceased husband's signature on [**49] the "We Owe" form. Chapa testified that numerous other documents were forged, and there was evidence that Garcia admitted to Gullo he had promised Chapa the features listed on the "We Owe" form.

The jury found Chapa's evidence credible and awarded her $ 7,213 for breach of contract (the difference in value between the vehicle promised and the one delivered), $ 7,213 for fraud, $ 21,639 for mental anguish, $ 250,000 for exemplary damages, $ 7,213 for damages under the Texas Deceptive Trade Practices Act, and $ 20,000 for attorney's fees. The trial court rendered judgment only on the breach of contract claim, but the court of appeals reversed and reinstated all the awards except for exemplary damages, which the court remitted to $ 125,000, one-half of what the jury awarded.

I agree with the Court that Chapa must elect only one liability theory upon which to recover, and the court of appeals erred to the extent it concluded otherwise. But I disagree that the court of appeals' remittitur is constitutionally infirm or that Chapa's attorney's fees are capable of segregation.

## II. Exemplary Damages

In Texas, the amount of exemplary damages for which a defendant may be liable is capped [**50] at

> an amount equal to *the greater of*:
>
> (1) (A) two times the amount of economic damages; plus
>
> (B) an amount equal to any noneconomic damages found by the jury, not to exceed $ 750,000; or
>
> (2) $ 200,000.

*TEX. CIV. PRAC. & REM. CODE § 41.008(b)* (emphasis added). I agree with the Court that the mere existence of a statutory cap does not foreclose a federal constitutional check for exorbitancy. But the United States Supreme Court has instructed that reviewing courts should accord "substantial deference" to legislative judgments concerning appropriate sanctions. *BMW of N. Am. v. Gore, 517 U.S. 559, 583,* [*318] *116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996).* "[A] punitive damages award that comports with a statutory cap provides strong evidence that a defendant's due process rights have not been violated." *Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 65 (1st Cir. 2005)* (citing *Romano v. U-Haul Int'l, 233 F.3d 655, 673 (1st Cir. 2000)).* The award the Court finds excessive today is well below the statutory cap that the Legislature determined appropriate when a defendant engages in conduct [**51] that would support an exemplary damages award. Neither does the award violate the three-part test for constitutional exorbitancy that the United States Supreme Court has articulated. *See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418-19, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).*

Courts must consider three guideposts when reviewing an exemplary damage award: (1) the degree of reprehensibility of the misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil or criminal penalties that could be imposed for comparable misconduct. *Id.; Gore, 517 U.S. at 575.* According to the Supreme Court, it is "the degree of reprehensibility of the defendant's conduct" that is "[t]he most important indicium of the reasonableness of a punitive damages award," and five factors guide that assessment: (1) whether the harm caused was physical rather than economic, (2) whether the conduct evinced an indifference to others' health or safety, (3) whether the harm involved repeated acts or isolated incidents, (4) whether the [**52] target of the conduct was financially vulnerable, and (5) whether the harm resulted from mere accident or from "intentional malice, trickery, or deceit . . . ." *Campbell, 538 U.S. at 419.*

The Court summarily concludes that only the last of these factors, deceitful conduct, favors Chapa. And the Court gives that conduct very cursory attention, even though the Supreme Court has said that the "infliction of economic injury, *especially when done intentionally through affirmative acts of misconduct . . .* can warrant a substantial penalty." *Gore, 517 U.S. at 576* (citing *TXO Prod. Corp. v. Alliance Res. Corp. 509 U.S. 443, 453, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993)).* Assuming Chapa elected to recover on the jury's fraud finding, she would be entitled to $ 28,852 in compensatory damages.

Thus, the penalty the court of appeals determined to be appropriate reflects a ratio between compensatory and exemplary damages of a little more than 4 to 1, a differential the petitioners have not demonstrated is constitutionally disproportionate to the defendant's conduct here. *See TXO Prod. Corp., 509 U.S. at 462* (holding a 10 to 1 ratio permissible); [**53] *Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 19, 111 S. Ct. 1032, 113 L. Ed. 2d 1 (1991)* (affirming award of four times compensatory damages and two hundred times economic damages); *Glasscock v. Armstrong Cork Co., 946 F.2d 1085, 1095-96 (5th Cir. 1991)* (upholding a 20 to 1 ratio).

As for the other reprehensibility factors, the Court either misapplies them or gives them short shrift. For example, the Court's conclusion that Gullo's actions caused Chapa only economic harm ignores the jury's award of mental anguish damages, a damage element we have long considered non-economic that compensates for harm with physical elements. *See Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 763, 46 Tex. Sup. Ct. J. 1133 (Tex. 2003).* The Court also concludes Gullo Motors' misconduct was an isolated incident that did not involve repeated acts, even though the evidence indicates otherwise. Gullo Motors committed [*319] multiple acts of misconduct, including switching contracts, altering documents, engaging in deceptive and threatening behavior, and even forging the signatures of Chapa and her deceased husband. In sum, the factors that the Court purports to follow in determining the reprehensibility [**54] of Gullo Motors' conduct weigh in favor of the court of appeals' remitted award, not against it.

The second guidepost used to review an exemplary damage award examines the ratio between exemplary and compensatory damages. The Supreme Court has refused to adopt a bright-line constitutionally prohibited ratio. Instead, it has suggested a range beyond which exemplary damage awards will likely become constitutionally exorbitant, stating "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell, 538 U.S. at 419.* The Court's opinion in this case highlights a 17 to 1 ratio that reflects a comparison between the remitted award and *economic* damages. The constitutionally relevant comparison, though, focuses on *compensatory* rather than economic damages, which yields a much lower 4.33 to 1 ratio.

The third guidepost considers civil or criminal penalties that could be imposed for comparable misconduct. *Campbell, 538 U.S. at 418*; *Gore, 517 U.S. at 575.* The Court considers two potential civil penalties of $ 10,000 and $ 20,000 that Gullo Motors' conduct [**55] might subject it to, yet declines to consider potentially applicable criminal penalties that, according to Chapa, would result in jail time and $ 80,000 in felony fines for forgery, document destruction, and fraudulently inducing signatures. Certainly I agree that "the remote possibility of a criminal sanction does not automatically sustain a punitive damages award," as the Court recites, but that doesn't mean comparable potential criminal sanctions should be altogether ignored. *Campbell, 538 U.S. at 428.*

In my view the more important issue is not the actual dollar amount that Chapa will ultimately recover, but the low threshold this Court steps over to declare a jury award constitutionally exorbitant. Had I been on the jury in this case, I may well have disagreed with the amount of exemplary damages the jury actually awarded or even the amount the appellate court suggested in its remittitur. Although exemplary damage awards can serve worthwhile purposes, they can also have debilitating economic impact and should be carefully policed by the courts. *See Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 31, 37 Tex. Sup. Ct. J. 883 (Tex.1994).* Our courts of appeals in Texas have long [**56] been empowered to suggest a remittitur of excessive awards when the evidence is factually insufficient to support them. *Id.*; *TEX. R. APP. P. 46.3.* The court of appeals assiduously exercised that power in this case. It is, of course, appropriate for this Court to intervene if the appeals court allows a constitutionally offensive award to stand. But when the Court chooses a marginal case like this in which to intervene, it risks intruding upon an area that has traditionally been the well-patrolled province of our courts of appeals. And when, as here, the Legislature has chosen to set its own parameters for such awards, the Court's intrusion is even more disturbing.

## III. Attorney's Fees

I also question the Court's decision to address the attorney's fee issue in this case. If the court of appeals renders judgment on remand based on the jury's fraud finding, the attorney's fee issue will be moot. Thus, the Court's analysis of the issue is purely advisory. *TEX. CONST. art. II, § 1*; *Brooks v. Northglen Ass'n,* [*320]

*141 S.W.3d 158, 164, 47 Tex. Sup. Ct. J. 719 (Tex. 2004).* But even assuming the Court properly reaches the issue, I disagree with the Court's application [**57] of the rule it announces. According to the Court, when the legal services themselves advance both a recoverable and unrecoverable claim, segregation is not required. The Court concludes that at least some of Chapa's attorney's fees are attributable only to claims for which fees are not recoverable, requiring a new trial. It is true that some of Chapa's attorney's fees are attributable to her common-law fraud claim for which fees are not recoverable. Attorneys fees are recoverable, though, under the DTPA for deceptive acts or practices. It is unclear to me, and the Court does not explain, how the legal services used to advance Chapa's DTPA claim did not also advance her common-law fraud claim. The court's charge that was read to the jury instructed that Gullo Motors violated the DTPA if it (1) breached an express warranty, defined as any affirmation of fact that related to the 2002 Highlander Limited and became part of the basis of its bargain with Chapa, or (2) engaged in any false, misleading, or deceptive act or practice upon which Chapa relied to her detriment. A false, misleading, or deceptive act or practice includes representing that goods or services are of a particular standard, [**58] quality, grade, or of a particular style or model, or, failing to disclose information concerning goods which was known at the time of the transaction if such failure to disclose was intended to induce the consumer into a transaction the consumer would not have entered had the information been disclosed. As for the common-law fraud claim, the jury was instructed that Gullo Motors committed fraud if (a) it made a material misrepresentation, (b) the representation was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, (c) the representation was made with the intention that Chapa would act upon it, and (d) Chapa relied on the misrepresentation and thereby suffered injury. The evidence that Chapa presented to support her fraud claim also supported her DTPA claim, and vice versa. Because the legal services provided to advance the DTPA claim also advanced the fraud claim, the fees incurred cannot be segregated even under the Court's own analysis.

* * *

For the reasons expressed, I respectfully dissent.

Harriet O'Neill

Justice